UNITED STATES of America,
Plaintiff–Appellee,

v.

Carl Leslie BUGGS,
Defendant–Appellant.

No. 89–2130.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 27, 1990.

Decided May 18, 1990.

Thomas O. Plouff, Asst. U.S. Atty., South Bend, Ind., Andrew B. Baker, Asst. U.S. Atty., Hammond, Ind., Rick L. Jancha, Asst. U.S. Atty., South Bend, Ind., for the U.S.

Scott L. King, King & Meyer, Gary, Ind., for Carl L. Buggs.

Before FLAUM, EASTERBROOK and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

A jury found the defendant, Carl Buggs, guilty of several narcotics and firearm offenses. Mr. Buggs was sentenced to four concurrent terms of nine years imprisonment on the drug charges, a concurrent term of nine years for possession of a firearm by a convicted felon, and a consecutive five year term for using or carrying a firearm in relation to a drug offense. Mr. Buggs challenges the convictions and the sentence imposed. We affirm.

## I

## BACKGROUND

A. *Facts*

Early in 1988, Carl Buggs traveled to Indianapolis, Indiana and met with a man named William Perry. Mr. Buggs proposed establishing a narcotics distribution operation in which he would provide Mr. Perry with cocaine and heroin. Under the defendant's plan, Mr. Perry would sell the drugs, retain forty per cent of the profits, and deliver the remaining sixty per cent to the defendant. Mr. Buggs returned to Indianapolis in late spring of 1988 to discuss the details of his plan with Mr. Perry.

Unknown to Mr. Buggs, William Perry was a confidential informant for the Marion County Police Department. Following Mr. Buggs' second trip to Indianapolis, Mr. Perry contacted Officer John T. Jones of the Metropolitan Drug Task Force. On June 16, 1988, Mr. Perry and Officer Jones traveled to a house in South Bend, Indiana, to purchase heroin from Mr. Buggs. Before leaving Indianapolis, Mr. Perry was searched by Task Force personnel in accordance with standard procedure. Mr. Perry did not possess any narcotics, although prior to the search he showed Officer Jones a foil package containing lactose.[1] Mr. Perry had purchased the powder at a pharmacy for use in his undercover role as a drug dealer, and had brought the package with him to satisfy Mr. Buggs' request that he supply a cutting agent.

Officer Jones and Mr. Perry met with officers from the South Bend Police Department and agents from the Drug Enforcement Administration (DEA) and coor-

---

1. Lactose, commonly known as milk sugar, is a legal substance that can be purchased over the counter. Tr. at 188.

dinated surveillance. They then proceeded to Mr. Buggs' house. Mr. Buggs informed them that the heroin had not yet arrived. While they waited in the living room for the drugs to be delivered, Mr. Buggs produced what appeared to be two to three ounces of cocaine and asked whether anyone "wanted a snort." Tr. at 106. Officer Jones refused the offer, although Mr. Perry and Mr. Buggs both ingested a small amount. Mr. Perry, who was familiar with the effects of cocaine, testified that the substance he and Mr. Buggs ingested was in fact cocaine.

They continued to wait for the heroin to be delivered while Mr. Buggs measured out the cocaine into individual packets. As time passed and the heroin still had not arrived, Mr. Buggs appeared to become nervous. He made a telephone call, then left Officer Jones and Mr. Perry and went into a bedroom. He returned carrying a large pistol, which he placed on the sofa next to him, and continued to package the cocaine. Mr. Perry believed the gun was a .357 magnum; Officer Jones described the weapon as a Smith and Wesson .357 magnum, the same type of firearm he carried.

A man introduced as Chester finally arrived with the heroin. He handed Mr. Buggs a package wrapped in foil, then he, Mr. Buggs, and Mr. Perry went into a bedroom; Officer Jones remained in the living room. Mr. Buggs used a baseball bat to break up the hard pieces of dark brown heroin in the foil packet, then mixed some [2] of it with the powder Mr. Perry had brought. Familiar with the effects of heroin, Mr. Perry ingested a small amount of the dark brown substance and ascertained that it was in fact heroin. Based upon the agreement they had reached for the purchase of half an ounce of heroin, Mr. Perry paid Mr. Buggs $250 in cash, leaving $350 owing, and received a small package. They discussed arrangements for a second transaction, and Mr. Buggs agreed to provide

three to seven ounces of heroin at $800 per ounce.[3] Officer Jones and Mr. Perry then left, having purchased what was later analyzed to be 9.95 grams of 1.2% heroin.

On June 30, 1988, Officer Jones and Mr. Perry returned to Mr. Buggs' house in South Bend. Mr. Perry again was searched before leaving Indianapolis. Surveillance was coordinated with the police and DEA before Officer Jones and Mr. Perry proceeded to the house. They eventually met with Mr. Buggs, who informed them that they would have to wait several hours for the heroin. Following a series of telephone calls, Mr. Buggs advised Officer Jones and Mr. Perry that the heroin had been "overcut" and therefore was unsalable. Tr. at 118–19. Mr. Buggs nevertheless assured them that he could obtain the heroin he had negotiated to sell. Officer Jones gave Mr. Buggs $1500 in marked bills as a partial payment for an expected four to six ounces of heroin, and Mr. Buggs stated that he would be able to get the drugs that afternoon. He instructed Officer Jones and Mr. Perry to call his house later in the day for details. Officer Jones and Mr. Perry left and rejoined the surveillance officers.

Approximately three hours later, a helicopter surveillance team observed two individuals drive away from Mr. Buggs' house. The helicopter followed the car out of the South Bend city limits to the Hammond/Gary, Indiana area. In South Bend, meanwhile, Mr. Perry made several telephone calls to Mr. Buggs' residence as Mr. Buggs had instructed. He placed the calls in the presence of the ground surveillance team and spoke with Mr. Buggs' fiancee each time. During their last conversation, Mr. Perry learned that Mr. Buggs had been unable to obtain the heroin but would be returning to South Bend shortly with a substitute. Part of the ground surveillance team waited to intercept Mr. Buggs' vehicle in case he returned to South Bend by the same route he had taken out of the

**2.** Based on his experience, Mr. Perry estimated that Chester handed the defendant approximately two ounces of heroin; Mr. Perry and Officer Jones received approximately one half ounce of the heroin/lactose mixture.

**3.** At trial, Officer Jones and Mr. Perry testified that the negotiated amount ranged from three to seven ounces.

city. When Mr. Buggs passed the surveillance team, one of the officers requested that the vehicle be stopped.

South Bend police curbed the car and ordered the occupants, Chester and Mr. Buggs, to step out. Mr. Buggs was carrying a significant amount of cash, including the $1500 in marked bills given to him by Officer Jones. No weapons were found either in the car or on its passengers, although quantities of drugs were recovered. Four plastic bags of marijuana were found, two in the front of the car, one on Chester, and one on Mr. Buggs. The bag recovered from Mr. Buggs also contained an amount of rock cocaine as well as thirty-two packets of powdered cocaine. Laboratory tests revealed that the officers seized a total of 4.22 grams of 86% cocaine, 27.18 grams of 94% cocaine, and 12.59 grams of marijuana.

The facts recited above were established at trial. The government also called an agent from the Bureau of Alcohol, Tobacco, and Firearms, who testified that Smith and Wesson handguns are manufactured in Springfield, Massachusetts. He also testified that a .357 magnum is a revolver and that no revolvers are manufactured within Indiana's borders. In addition, Officer Jones testified that a Smith and Wesson .357 magnum is "a weapon that will or is designed to or may be readily converted to expel a projectile by the action of an explosive." Tr. at 123.

Following deliberations, the jury found Mr. Buggs guilty of (1) possession with the intent to distribute heroin on June 16, 1988, (2) possession with the intent to distribute cocaine on June 16, 1988, (3) possession with the intent to distribute cocaine on June 30, 1988, (4) conspiracy to distribute and possess with the intent to distribute heroin, (5) possession of a firearm by a convicted felon, and (6) using or carrying a firearm during and in relation to a narcotics offense.

**B. Sentencing**

Mr. Buggs argued that the total amount of heroin or its equivalent involved in the case, upon which his sentence was based, had been calculated incorrectly. Following an evidentiary hearing, the district court accepted the total weight recommended in the presentence report. The court concluded that the amount of heroin involved in the June 16 transaction was the negotiated amount (one half ounce or 14.175 grams) rather than the amount actually sold (9.95 grams). The court also determined that it could consider the heroin Officer Jones and Mr. Perry negotiated to purchase on June 30 because the negotiated sale was relevant conduct in furtherance of the drug conspiracy. The court concluded that the negotiated amount was 4 ounces and therefore added 113.4 grams of heroin to the total quantity involved in the case.

Based on the drug equivalency tables appended to section 2D1.1 of the sentencing guidelines, the district court determined the heroin equivalent of the cocaine and marijuana Mr. Buggs possessed on June 16 and June 30, 1988. With respect to the cocaine possessed on June 16, the court took a conservative view. Officer Jones estimated that Mr. Buggs had two to three ounces; the court found that the quantity involved was two ounces, which is equivalent to 11.34 grams of heroin. *See* Guidelines § 2D1.1, Drug Equivalency Tables. The heroin equivalent of the marijuana and cocaine Mr. Buggs was carrying when arrested on June 30 was 6.201 grams. Based on these findings, the court calculated that the total amount of heroin (or its equivalent) involved in the case was approximately 144 grams.[4] Under the applicable sentencing guidelines, Mr. Buggs' conduct was punishable by 92 to 115 months imprisonment.[5] The court imposed concurrent nine

---

**4.** In calculating the total amount of heroin involved in the case, the district court rounded the grams involved in each of the four drug counts to the nearest whole number. This resulted in a total of 144 grams rather than 145.116 grams and did not affect the applicable base offense level or prejudice the defendant.

**5.** Mr. Buggs does not dispute that a crime involving 100–399 grams of heroin is a level 26 offense. *See* Guidelines § 2D1.1, Drug Quantity Table. Nor does he contest that he has eight criminal history points and therefore falls into Criminal History Category IV. The applicable sentencing range for a level 26 offense coupled

year prison terms (108 months) for the narcotics offenses. Mr. Buggs also was sentenced to a concurrent nine year term for possession of a firearm by a convicted felon as well as the mandatory consecutive five year term for using or carrying a firearm in relation to a drug trafficking offense.

## II

### ANALYSIS

#### A. *Sufficiency of the Evidence*

Mr. Buggs contends that the evidence is insufficient in three respects. He claims first that the government failed to prove that he possessed a "firearm" as that term is statutorily defined. Second, Mr. Buggs contends that the evidence did not establish that the pistol he was seen carrying had traveled across state lines. Finally, the defendant maintains that the government failed to prove that the substance he sold to Officer Jones on June 16, 1988 was in fact heroin.

In considering a challenge to the sufficiency of the evidence, "we review the evidence in the light most favorable to the prosecution and draw all reasonable inferences in its favor." *United States v. Hogan*, 886 F.2d 1497, 1502 (7th Cir.1989); *see United States v. Ludwig*, 897 F.2d 875, 879 (7th Cir.1990). We must affirm the convictions " '[i]f *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Hogan*, 886 F.2d at 1502 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in *Jackson* )).

As we emphasized in *United States v. Giangrosso*, 779 F.2d 376, 382 (7th Cir. 1985): *"[T]his court is not the trier of fact and we are required to uphold the jury's verdict where 'any rational trier*

of fact' could have found the defendant guilty of the crime." ... "Only when the record contains no evidence, regardless of how it is weighed, from which the [trier of fact] could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict." [*United States v.*] *Nesbitt*, 852 F.2d [1502,] 1509 [ (7th Cir.1988) ] (quoting *United States v. Whaley*, 830 F.2d 1469, 1472 (7th Cir.1987), *cert. denied*, [486] U.S. [1009], 108 S.Ct. 1738, 100 L.Ed.2d 202 (1988) which quoted, in turn, *United States v. Moore*, 764 F.2d 476, 478 (7th Cir.1985)) (emphasis added).

*United States v. Vega*, 860 F.2d 779, 793 (7th Cir.1988); *see Ludwig*, 897 F.2d at 879 (quoting *Vega* ).

The appellant shoulders a heavy burden in seeking reversal based on insufficient evidence, particularly when the facts turn upon credibility determinations. *United States v. Sims*, 895 F.2d 326, 329 (7th Cir. 1990). We " 'will not weigh the evidence or assess the credibility of the witnesses,' " but leave that task to the fact-finder's sound discretion. *United States v. Edun*, 890 F.2d 983, 988–89 (7th Cir.1989) (quoting *United States v. Ramirez*, 796 F.2d 212, 214 (7th Cir.1986)). Because the defendant was tried before a jury, "we must on review defer to reasonable inferences drawn by the jury and the weight it gave to the evidence. Likewise, we leave the credibility of witnesses solely to the jury's evaluation, absent extraordinary circumstances." *Hogan*, 886 F.2d at 1502 (citation omitted). With these legal principles in mind, we turn to an analysis of the defendant's claims.

#### 1. The "firearm" counts

The jury returned guilty verdicts on two firearm counts. Specifically, the jury determined that Mr. Buggs had violated 18 U.S.C. § 922(g)(1),[6] which prohibits a con-

---

with a criminal history category of IV is 92 to 115 months. *See* Guidelines Sentencing Table.

**6.** Section 922(g) provides, in relevant part:
 (g) It shall be unlawful for any person—

 (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year

 . . . . .

 to ... possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been

victed felon from possessing or receiving any firearm shipped in interstate or foreign commerce, and 18 U.S.C. § 924(c)(1),[7] which prohibits the use or carrying of a firearm in relation to a narcotics offense. For purposes of these violations, the term "firearm" means "any weapon ... which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." 18 U.S.C. § 921(a)(3). Mr. Buggs challenges the firearm convictions on the ground that the government failed to prove that the "alleged pistol was capable of firing any projectile." Appellant's Br. at 8–9. He argues that Officer Jones and Mr. Perry testified only that they had seen what *appeared* to them to be a large pistol. It *appeared* to each of them to be a .357 magnum but neither was sure." *Id.* at 8 (emphasis in original).

■ At the outset, we cannot accept Mr. Buggs' claim that the government is required to prove that the gun was operable. *See, e.g., United States v. Rush,* 840 F.2d 580, 582 (8th Cir.), *cert. denied,* 487 U.S. 1238, 108 S.Ct. 2908, 101 L.Ed.2d 940 (1988);[8] *Parker v. United States,* 801 F.2d 1382, 1383–85 (D.C.Cir.1986), *cert. denied,* 479 U.S. 1070, 107 S.Ct. 964, 93 L.Ed.2d 1011 (1987); *United States v. Harris,* 792 F.2d 866, 867–68 (9th Cir.1986).[9] "The statute does not require that the Government prove the gun was actually capable of firing. Rather, it is enough that the gun was 'designed to' fire." *United States v. Polk,* 808 F.2d 33, 34 (8th Cir.1986) (citation omitted).[10]

■ The government in this case offered testimony from a veteran officer that Mr. Buggs possessed a Smith and Wesson .357 magnum. Officer Jones testified that a Smith and Wesson .357 magnum, the same sidearm he carries, is "a weapon that will or is designed to or may be readily converted to expel a projectile by the action of an explosive." Tr. at 123. Mr. Perry also testified that he saw the weapon and believed it was a .357 magnum. Such evidence was sufficient to satisfy the government's burden of proving that the gun was designed to fire. *See United States v. Rouco,* 765 F.2d 983, 996 (11th Cir.1985) (government proved use of "firearm" where agent testified that he saw defendant remove a .38 caliber pistol from his waistband: "Testimony by an experienced federal law enforcement officer familiar with handguns that the defendant carried a .38 caliber pistol certainly authorized the jury to find that the defendant possessed a firearm, defined [by Florida law] as a weapon 'designed to ... expel a projectile.'"), *cert. denied,* 475 U.S. 1124, 106 S.Ct. 1646, 90 L.Ed.2d 190 (1986).[11]

---

shipped or transported in interstate ... commerce.

18 U.S.C. § 922(g)(1). Mr. Buggs does not dispute that he has been convicted of a crime punishable by imprisonment for more than one year.

7. Section 924(c)(1) reads, in relevant part:

 (c)(1) Whoever, during and in relation to any ... drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such ... drug trafficking crime, be sentenced to imprisonment for five years....

18 U.S.C. § 924(c)(1).

8. This case was decided under 18 U.S.C. App. § 1202(a)(1), which prohibited a convicted felon from receiving a firearm in or affecting commerce. Because § 1202 was the statutory forerunner of § 922(g), the case is instructive. *United States v. Lowe,* 860 F.2d 1370, 1374 (7th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989).

9. *See also United States v. Rouco,* 765 F.2d 983, 996 (11th Cir.1985), *cert. denied,* 475 U.S. 1124,

106 S.Ct. 1646, 90 L.Ed.2d 190 (1986), where the defendant challenged a § 924(c) conviction on the ground that "the government failed to prove that the pistol was in fact a firearm capable of expelling a projectile." The Eleventh Circuit concluded that this argument was "imaginative, but frivolous." *Id.*

10. *See supra* note 8.

11. *See also United States v. Harris,* 792 F.2d 866 (9th Cir.1986), where the defendant was convicted under section 924(c) and advanced the same argument made by Mr. Buggs. On appeal the court found that there was sufficient evidence to sustain the jury's guilty verdict: bank employees testified that the defendant had carried a gun, and a customer who was familiar with weapons testified that the defendant had what *"appeared* to be a .38 or .45 automatic." *Id.* at 867–68 (emphasis supplied). The government also introduced a surveillance photograph of the defendant pointing what looked like a gun. In *United States v. Parker,* 801 F.2d 1382 (D.C.Cir. 1986), *cert. denied,* 479 U.S. 1070, 107 S.Ct. 964,

 The fact that the gun was not produced at trial or that the witnesses did not have an opportunity to examine closely the weapon does not prevent conviction of a firearm offense. *See Parker*, 801 F.2d at 1383–85 (sufficient evidence supported jury verdict that defendant had used or carried a "firearm" where government did not introduce weapon or evidence that it had been fired, but two bank tellers testified that defendant had carried a gun); *Harris*, 792 F.2d at 867–68 (court affirmed section 924(c) conviction based on surveillance photograph and witness testimony that defendant had carried a gun); *Rouco*, 765 F.2d at 996 (proof that defendant used or carried a "firearm" was sufficient where DEA agent testified that defendant had carried a pistol); *United States v. Liles*, 432 F.2d 18, 19–20 (9th Cir.1970)[12] (evidence sufficient to prove that object possessed was "firearm" where gun was not produced but manager of sporting goods department briefly examined gun and identified it as common type of revolver).

It was for the trier of fact to weigh the evidence and determine whether the government met its burden of demonstrating that the defendant possessed a "firearm." In returning guilty verdicts on the weapons charges, the jury was convinced that the object Mr. Buggs displayed on June 16, 1988 was in fact a firearm. The jury was entitled to find reliable the testimony of Officer Jones and William Perry that the object Mr. Buggs had was a Smith and Wesson .357 magnum. From that evidence, a rational jury could have reached the conclusion that the object was a gun and that guns are designed to expel projectiles. We therefore will not disturb the jury's verdict. *See United States v. Hogan*, 886 F.2d 1497, 1502 (7th Cir.1989).

### 2. Travel in interstate commerce

 Mr. Buggs contends that the government failed to establish an element of the section 922(g)(1) count, specifically, that the weapon involved in this case had traveled across state lines or affected commerce. Proof that a weapon has previously traveled in interstate commerce is sufficient to demonstrate the requisite commerce element for the purposes of section 922(g)(1). *United States v. Bass*, 404 U.S. 336, 350, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971);[13] *United States v. Petitjean*, 883 F.2d 1341, 1347 (7th Cir.1989); *United States v. Sutton*, 521 F.2d 1385, 1391 (7th Cir.1975).[14] Similarly, evidence that a weapon was manufactured outside of the state in which it was possessed is sufficient proof that the weapon was "in or affecting commerce" for purposes of the statute. *Petitjean*, 883 F.2d at 1347; *United States v. Lowe*, 860 F.2d 1370, 1374 (7th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989). In *Lowe*, the defendant argued that the testimony of an agent from the Bureau of Alcohol, Tobacco, and Firearms was insufficient to prove a violation of section 922(g)(1). The agent testified that the weapon at issue had been manufactured in West Germany. *Id.* at 1372. Given that testimony, the court concluded that the defendant had "failed to carry the 'heavy burden' that must be shouldered under a sufficiency of the evidence claim." *Id.* at 1374 (quoting *United States v. Bruun*, 809 F.2d 397, 408 (7th Cir.1987)).

 In this case, there was evidence that the weapon had traveled in interstate commerce as well as testimony that the weapon was manufactured outside of Indiana. Officer Jones and William Perry both identified the gun as a .357 magnum. Mr. Buggs maintains that this testimony was equivocal because the witnesses did not

---

93 L.Ed.2d 1011 (1987), a section 924(c) conviction similarly was upheld. In *Parker*, the only testimony relating to the defendant's possession of a firearm came from two bank employees who testified that the defendant carried a "gun" or "pistol." *Id.* at 1383. The court rejected the argument that to rely solely on eyewitness testimony, the government witness had to be knowledgeable about firearms and have had an opportunity to examine closely the weapon. *Id.* at 1383–85.

**12.** *See supra* note 8.

**13.** *Id.*

**14.** *Id.*

testify with certainty that the weapon was a .357 magnum. However, this was a fact question for the jury. Coupled with the testimony of the government agent that a .357 magnum is a revolver and no revolvers are made in Indiana, there was sufficient evidence for a rational jury to conclude that the gun had at some point traveled across state lines before reaching Mr. Buggs. *E.g., Bass,* 404 U.S. at 350, 92 S.Ct. at 523. Moreover, Officer Jones testified that the weapon was a Smith and Wesson .357 magnum. The government agent testified that Smith and Wesson handguns are manufactured in Springfield, Massachusetts. This testimony also could lead a rational jury to conclude that Mr. Buggs possessed a firearm "in or affecting commerce." *See Lowe,* 860 F.2d at 1374. There is ample evidence to support the conviction under section 922(g)(1).

3. June 16, 1988 narcotics transaction

■ Mr. Buggs maintains that the evidence adduced at trial cannot sustain his conviction for possessing with the intent to distribute half an ounce of heroin on June 16, 1988. He does not dispute that the package he sold to Officer Jones on that date contained heroin. Instead, he maintains that the government failed to prove beyond a reasonable doubt that the heroin was in the dark brown substance he provided, rather than the untested substance furnished by William Perry. Although Mr. Perry was searched and the government was aware that he had a small package of light brown powder with him, the powder was not tested. Mr. Buggs does not deny that the heroin could have been in the dark brown substance, but claims it is "just as likely" that Mr. Perry supplied the drug. Appellant's Br. at 14. This claim is nothing more than an attack on the credibility of Mr. Perry. Such an issue is for the jury's determination. *See United States ex rel. Morton v. Mancusi,* 393 F.2d 482, 484 (2d Cir.), *cert. denied,* 393 U.S. 927, 89 S.Ct. 262, 21 L.Ed.2d 264 (1968).[15] Based on the trial testimony, the jury concluded that on June 16, 1988, Mr. Buggs possessed and intended to distribute heroin. We are invited to reassess that testimony, a function we cannot and will not undertake.

Examining the evidence in the light most favorable to the government, *United States v. Hogan,* 886 F.2d 1497, 1502 (7th Cir.1989), it is clear that the jury verdict is supported by a permissible view of that evidence. Laboratory tests conclusively determined that the package sold to Officer Jones contained heroin. Mr. Buggs does not dispute that the package contained a mixture of the dark brown substance he provided and the powder supplied by William Perry. Mr. Perry testified that the powder was lactose, nothing more. He also testified that he ingested a small amount of the dark brown substance and determined, based upon past experience, that it was heroin. This was sufficient evidence to sustain Mr. Buggs' conviction.

## B. *Application of the Sentencing Guidelines*

In part I, B of this opinion, we have set forth, in considerable detail, the district court's calculation of the total amount of drugs that had to be considered in sentencing the defendant. Based on the 144 gram total, Mr. Buggs was sentenced, pursuant to the sentencing guidelines, to 108 months imprisonment. Mr. Buggs raises two distinct challenges to that sentence. He questions whether negotiated amounts of heroin were properly considered in calculating the applicable guidelines range. Second, he asks that we review whether the district court's factual determinations concerning the total amount of heroin involved in this case are clearly erroneous.

**15.** In *United States v. Pace,* 898 F.2d 1218, 1236 (7th Cir.1990), the court declined to accept the defendant's claim that the evidence was insufficient to support forfeiture of money found in his home where the circumstances indicated that the cash was related to his gambling activities rather than any narcotics transaction. Rather, the court stated that "while the jury could have inferred that the money was related to gambling, not cocaine, the jury could have also inferred that the money was related to the cocaine transaction. The choice of which inference to draw was for the jury, and we will not disturb that choice." *Id.*

As a threshold matter, we note that our review of sentences imposed under the guidelines is governed in part by statute:

> The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.

18 U.S.C. § 3742(e). The sentence will be upheld if the guidelines were properly applied to factual conclusions that are not clearly erroneous. *United States v. Vopravil*, 891 F.2d 155, 157 (7th Cir.1989). Ascertaining the quantity of drugs involved in an offense for the purpose of sentencing is a factual determination subject to the clearly erroneous standard. *United States v. Alston*, 895 F.2d 1362, 1369 (11th Cir.1990); *United States v. Thomas*, 870 F.2d 174, 176 (5th Cir.1989).

### 1.

■ Mr. Buggs maintains that the sentencing court improperly considered negotiated but undelivered amounts of heroin in calculating the total amount of drugs involved in this case. However, the guidelines make it clear that the sentencing court is to include such amounts in its calculation. The first Application Note to Guideline § 2D1.4 (*Attempts and Conspiracies*) provides, in part:

> 1. If the defendant is convicted of a conspiracy that includes transactions in controlled substances in addition to those that are the subject of substantive counts of conviction, each conspiracy transaction shall be included with those of the substantive counts of conviction to

determine scale. If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. Where the defendant was not reasonably capable of producing the negotiated amount the court may depart and impose a sentence lower than the sentence that would otherwise result.[16]

With respect to the June 16 sale of heroin, where Mr. Buggs negotiated to sell more than he actually sold, the district court was correct in basing its calculation on the amount negotiated. While the application note speaks in terms of an uncompleted distribution, it is well established that it applies to partially completed distributions as well. *See, e.g., United States v. Alvarez–Cardenas*, 902 F.2d 734, 736 (9th Cir.1990); *United States v. Alston*, 895 F.2d 1362, 1369–71 (11th Cir.1990); *United States v. Candito*, 892 F.2d 182, 186 (2d Cir.1989); *United States v. Garcia*, 889 F.2d 1454, 1456–57 (5th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990); *United States v. Perez*, 871 F.2d 45, 48 (6th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989).

Although the aborted heroin transaction of June 30 was not the subject of a substantive drug trafficking count, it was alleged as an overt act in furtherance of the conspiracy. Therefore, the district court properly included the amount of drugs involved in this transaction in its sentencing calculation.[17] We note that Mr. Buggs never has argued and there is no evidence that he "was not reasonably capable of producing the negotiated amount." Application

---

16. This Note was amended, effective November 1, 1989. The third sentence now reads:

> However, where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing.

Guideline § 2D1.4, Application Note 1 (Nov. 1, 1989).

17. The guidelines also provide that any act committed in furtherance of an "offense of conviction" is relevant to determination of the proper guideline range. *See* Guideline § 1B1.3(a)(1). The jury convicted Mr. Buggs of conspiring to distribute more than 100 grams of heroin or its equivalent. The district court therefore did not err in concluding that the four ounces of heroin Mr. Buggs agreed to provide on June 30 "is 'relevant conduct' under section 1B1.3 ... [and] was conduct in furtherance of the conspiracy" to distribute heroin. R.47 at 7.

Note to Guideline § 2D1.4.[18] Nor did the district court make such a finding.

Moreover, we have held, as have several other courts of appeals, that negotiated amounts of drugs should be considered by the sentencing court. The Fifth Circuit first determined in *United States v. Thomas,* 870 F.2d 174 (5th Cir.1989), that the amount of cocaine involved in a conspiracy to distribute is the amount the defendant negotiated to supply. The court relied on the application note and concluded that "drug weights used by conspirators in negotiations should be used to calculate the drug weight applicable in the sentencing proceeding." *Id.* at 176.[19] Shortly after the Fifth Circuit decided *Thomas,* the Sixth Circuit concluded that "[u]nder the sentencing guidelines, the amount of the drug being negotiated, even in an uncompleted distribution, shall be used to calculate the total [a]mount in order to determine the base level." *United States v. Perez,* 871 F.2d 45, 48 (6th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989).[20] This court recently concluded in *United States v. Vopravil,* 891 F.2d 155, 159 (7th Cir.1989), that the sentencing court should consider negotiated amounts of drugs absent a determination that the defendant did not intend to or could not produce those amounts. The Second Circuit similarly concluded that two undelivered kilograms of cocaine from a negotiated sale for three kilograms properly could be included in calculating the applicable guidelines range. *United States v. Candito,* 892 F.2d 182, 186 (2d Cir.1989).[21] The

Eleventh Circuit determined that sentencing courts should calculate applicable guideline ranges based upon the amount of drugs negotiated. *United States v. Alston,* 895 F.2d 1362, 1369–71 (11th Cir. 1990). Most recently, the Ninth Circuit concluded that "a conspiracy conviction does not turn on the question of whether defendant succeeds in doing all he attempted to do," and therefore "[q]uite clearly the offense level for a conspiracy is determined by the amount that a defendant conspired to sell and not by the amount ultimately sold." *United States v. Alvarez–Cardenas,* 902 F.2d 734, 736 (9th Cir.1990).

Therefore, it is clear that, under the guidelines, the amount of narcotics involved in a transaction is the amount negotiated. With regard to the June 16 sale of heroin, the district court properly considered the negotiated amount of 14.175 grams rather than the 9.95 grams actually sold. The district court also correctly held that the amount negotiated on June 30 should enter into the sentencing calculation.

### 2.

Having determined that the total amount of heroin involved should reflect all amounts that Mr. Buggs negotiated to sell, the district court had to resolve the purely factual questions of how much heroin was involved in each actual or proposed transaction.

▮ With respect to the drugs possessed on June 16, the defendant challenges the

---

**18.** *See United States v. Candito,* 892 F.2d 182, 186 (2d Cir.1989) (defendant's challenge to inclusion of negotiated amounts failed where there was no evidence that he was not reasonably capable of producing such amounts); *United States v. Vopravil,* 891 F.2d 155, 159 (7th Cir.1989) (quoting the revised application note, court concluded that drug amounts are excluded from guideline calculations only if the district court determines that the defendant did not intend to or could not produce such amounts).

**19.** The Fifth Circuit has reiterated this rule since its decision in *Thomas. See United States v. Garcia,* 889 F.2d 1454, 1455–57 (5th Cir.1989) (where defendant negotiated to sell sixteen ounces of cocaine and sold eight ounces, district court properly based the sentence upon the sixteen ounce figure), *cert. denied,* — U.S. —,

110 S.Ct. 1829, 108 L.Ed.2d 958 (1990); *United States v. Gordon,* 876 F.2d 1121, 1126 (5th Cir. 1989) (where defendants conspired to deliver two kilograms of cocaine but delivered only samples, sentencing court properly imposed sentence based on the two kilogram figure).

**20.** *See also United States v. Rodriguez,* 896 F.2d 1031, 1032–34 (6th Cir.1990) (sentence affirmed for conspiracy to possess and distribute marijuana where sentencing range was based upon negotiated amounts contemplated by conspirators).

**21.** *See also United States v. Adames,* 901 F.2d 11 (2d Cir.1990) (sentence based on negotiated purchase of 7.7 kilograms of heroin from undercover agents upheld although defendant actually purchased only 1–2 kilograms).

district court's acceptance of Officer Jones' estimate that Mr. Buggs possessed two to three ounces of cocaine. It is undisputed that Mr. Buggs possessed an amount of cocaine on that date; the jury convicted him of the substantive offense and he does not challenge that conviction. His sole argument is that the district court should not have relied on Officer Jones' observations as to the weight of the cocaine absent testimony that the officer ever had seen or weighed cocaine.

The district court must resolve disputes important to the sentencing determination, relying on relevant information that "has sufficient indicia of reliability to support its probable accuracy." Guideline § 6A1.3. The amount of cocaine that Mr. Buggs possessed is clearly a factor important to the court's calculation of his sentence. Officer Jones provided the only testimony concerning that amount. The evidence revealed that Officer Jones was an experienced police officer who had worked exclusively on narcotics cases for the preceding year. "Giving the defendant the benefit of any doubt," the court determined that Mr. Buggs possessed two ounces of cocaine, the lowest figure consistent with the evidence. R.47 at 8. We conclude that it was not clearly erroneous for the sentencing court to rely on Officer Jones' estimate. Although there was no direct evidence that the officer had personal experience weighing cocaine, the court was entitled to consider the officer's background and conclude that his testimony was sufficiently reliable and probably accurate.

 With respect to the June 30 negotiated sale of heroin, Mr. Buggs contends that the only amount "consistently supported" by the evidence is three ounces. Officer Jones testified that the sale was to be for three to five ounces of heroin. William Perry testified that the original agreement was for between three and seven ounces. However, Mr. Perry explained that on the day of the transaction he and Officer Jones expected to receive no less than four to six ounces of heroin in exchange for the $1500 that had been paid to Mr. Buggs. The amount negotiated was solely a question of fact for the district court to determine. *United States v. Alston,* 895 F.2d 1362, 1369 (11th Cir.1990); *United States v. Thomas,* 870 F.2d 174, 176 (5th Cir.1989). The court gave Mr. Buggs the benefit of the doubt and concluded that the negotiated amount was four ounces. This figure is supported by the record and is not clearly erroneous. We therefore cannot accept Mr. Buggs' argument to the contrary.

### 3.

Finally, even assuming that the district court erred in calculating the applicable sentencing range, the error would be harmless. With regard to the June 16 sale of heroin, the difference between the negotiated half ounce and the actual sale weight is four grams. Accepting Mr. Buggs' argument that the district court should have disregarded Officer Jones' testimony concerning the amount of cocaine Mr. Buggs possessed on June 16, eleven grams (the heroin equivalent of two ounces of cocaine) would be removed from the sentencing computation. Accepting further the claim that the evidence supports only three ounces of heroin attributable to the June 30 negotiations, the difference is one ounce or twenty-eight grams. The total difference between the court's and Mr. Buggs' final computations is 43 grams, which yields a figure of 101 grams for sentencing purposes. Thus, even if we accepted all of Mr. Buggs' claims concerning the total amount of narcotics involved, that total would still reflect a level 26 offense (more than 100 and less than 400 grams of heroin) and a sentencing range of 92 to 115 months.

### Conclusion

Sufficient evidence was adduced at trial to support the jury's determinations. Moreover, the district court's factual conclusions were not clearly erroneous and the applicable sentencing range was properly calculated. The judgment of the district court is therefore affirmed.

AFFIRMED.