**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Roger FOWLER, Defendant–Appellant.**

No. 92–2598.

United States Court of Appeals,
Seventh Circuit.

Argued March 3, 1993.

Decided April 16, 1993.

K. Tate Chambers, Asst. U.S. Atty., Peoria, IL, Rodger A. Heaton (argued), Springfield, IL, for U.S.

Richard H. Parsons, Peoria, IL (argued), for defendant-appellant.

Before POSNER and EASTERBROOK, Circuit Judges, and PELL, Senior Circuit Judge.

PELL, Senior Circuit Judge.

Fowler appeals his sentence for conspiring to possess marijuana with intent to distribute, 21 U.S.C. § 846, arguing that the district court miscalculated the amount of marijuana attributable to him.

### I.

On at least twelve occasions between 1985 and 1988, Fowler bought 400–1000 pounds of marijuana from a drug dealer who later became a government cooperating witness (CW). Each time, Fowler provided a down payment when he collected the drugs and then paid the balance of the purchase price after he sold them.

In 1990, the CW contacted Fowler, again attempting to arrange a drug deal. Fowler initially requested only a small load of marijuana but later agreed to handle between 500 and 1000 pounds. The CW subsequently promised to deliver 1000 pounds of marijuana for a $100,000 down payment. When Fowler failed to produce the $100,000, the CW claimed that he sold the drugs to another customer.

The CW later told Fowler he had obtained another 600 pounds of marijuana, and Fowler agreed to buy the entire load. The next day, Fowler met the CW and an undercover FBI agent at a hotel. The three discussed the terms of the marijuana sale, including the down payment. Although Fowler claimed that he could raise $60,000 to $65,000 immediately, he returned later that day with only $30,000. When the CW learned of the limited down payment, he asked Fowler how quickly he could sell the 600 pounds. Fowler responded that buyers in the Chicago suburbs would devour the drugs quickly. After the CW agreed to release the marijuana, federal officials arrested Fowler.

Fowler was subsequently charged with four separate drug violations, but pleaded guilty only to conspiracy to possess marijuana. 21 U.S.C. § 846. At his sentencing, Fowler denied responsibility for the 600 pounds of marijuana, which the government had never produced and Fowler had never actually possessed. The district judge rejected Fowler's argument, finding that Fowler had negotiated to buy 600 pounds and had intended to possess that amount. Based on the 600 pounds, the judge calculated Fowler's base offense level at 26. The judge then added two points for Fowler's role in the offense and subtracted two points for his acceptance of responsibility. These calculations produced an offense level of 26 and a sentencing range of 63 to 78 months. The judge, however, departed downward from that range because Fowler had assisted the government, sentencing Fowler to 32 months imprisonment and four years of supervised release.

### II.

 On appeal, Fowler challenges the sentencing court's consideration of the 600 pounds that he negotiated to buy. Section 2D1.4 [1] of the Federal Sentencing Guidelines requires sentencing courts to consider negotiated but undelivered drug quantities. *United States v. Buggs*, 904 F.2d 1070, 1078 (7th Cir.1990). An application note to § 2D1.4 explains how to account for these quantities:

> If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. However, where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the Guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing.

The note thus requires courts to consider (1) the buyer's intent and (2) his ability to complete the deal. *See United States v. Cea*, 963 F.2d 1027, 1031 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 281, 121

---

1. Since Fowler's sentencing, § 2D1.4 has been repealed and recodified elsewhere in the Guide- lines.

L.Ed.2d 208 (1992); *Buggs*, 904 F.2d at 1078. The sentencing court makes these findings by a preponderance of the evidence, *United States v. Macias*, 930 F.2d 567, 570 (7th Cir.1991), and we review only for clear error. *Buggs*, 904 F.2d at 1078.

Fowler argues that he falls outside § 2D1.4 because he could not afford the marijuana or even a down payment.[2] In support of his claim, Fowler cites *United States v. Ruiz*, 932 F.2d 1174, 1183 (7th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 151, 116 L.Ed.2d 116 (1991). The defendant in *Ruiz* negotiated to sell two kilograms of cocaine but produced only one. *Id.* at 1177. In response to his buyer's concern about the other kilogram, Ruiz responded "[i]t doesn't matter. I'll get you the other kilo. And if you want, even ten more I can get." *Id.* Based on this statement, the district court added ten kilograms into its calculations, but this court reversed, finding the statement "no more than braggadocio." *Id.* at 1184.

Fowler's claims about his ability to buy the marijuana amount to more than idle boasts. Fowler admitted both before and after his arrest that he planned to finance the price of the marijuana by selling the 600 pounds in the Chicago area. This plan was feasible, given Fowler's demonstrated ability to sell large loads of marijuana and his consignment arrangement with the CW. *See United States v. Skinner*, 986 F.2d 1091, 1092–95 (7th Cir.1993) (defendant's poverty is irrelevant when he buys drugs on consignment).

■ Fowler, however, argues that he could not complete the deal because he could not afford a $100,000 down payment. While we do not dispute Fowler's inability to raise $100,000, we consider it immaterial here. The CW never demanded $100,000 for the 600 pounds; he requested that sum for the canceled 1000–pound sale. The parties actually agreed to transfer the 600 pounds for a $30,000 down payment.

Fowler now attacks this agreement as illusory. He has alluded to the possibility that drug agents like the CW could increase the duration of a sentence by offering large amounts of drugs at bargain prices or by offering extraordinary credit terms. We do not read the present case as being a deciding situation of this sort, but we do not ignore the possibility that there could be such an overly-zealous pursuit of a reverse sting to the point of being virtually a giveaway deal that it conceivably could result in the exclusion of an entire transaction from an offender's sentencing calculations.

We also note that at least two of this court's opinions consider a defendant's inability to produce money up front irrelevant to his actual capacity to complete a drug deal. In *United States v. Burrell*, the district court included a negotiated quantity of marijuana in its sentencing calculations, even though the defendants were having problems raising a cash down payment. *Burrell*, 963 F.2d 976, 994 (7th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 357, 121 L.Ed.2d 270 (1992). This court affirmed, although without specifically discussing the issues raised by § 2D1.4 of the Guidelines. *Id.* at 994–95. In *United States v. Mahoney*, this court implied that the inability to produce collateral is irrelevant under § 2D1.4. *Mahoney*, 972 F.2d 139, 143 (7th Cir.1992). As we explained:

> Application Note 1 to Guideline § 2D1.4 stops short of directing courts to examine whether the defendant was capable of fulfilling every request of the buyer or seller, regardless of whether it went to the core of the transaction; it simply asks whether the defendant was reasonably capable of producing the negotiated amount.

*Id.* at 142. Under this dicta from *Mahoney*, we may consider Fowler capable of buying the marijuana, even if he could not

**2.** At oral argument, Fowler raised two challenges to his sentence: that he could not afford the 600 pounds of marijuana and that the government could not produce such an amount. We do not interpret his brief to address the latter claim. Although the brief does comment

that "[t]he CW didn't have 600 pounds of marijuana," the argument is based solely on Fowler's inability to pay for the drugs. We may only address issues raised and supported in the appellate briefs. *Lim v. Central DuPage Hosp.*, 871 F.2d 644 (7th Cir.1989).

comply with the CW's request for a larger down payment.

## III.

Finding no error in the district court's calculations, we AFFIRM its sentencing judgment.