142 F.3d 440
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Jesse D. MCCLOUD, Defendant-Appellant.
 No. 97-1981.
 United States Court of Appeals,
Seventh Circuit.
 Argued March 4, 1998.
Decided April 6, 1998.
 
 Appeal from the United States District Court for the Southern District of Illinois, No. 95 CR 40032 JPG, J. Phil Gilbert, Chief Judge.
 Before Hon. WALTER J. CUMMINGS, Hon. JESSE E. ESCHBACH, Hon. DANIEL A. MANION, Circuit Judges.
 
 ORDER
 
 1
 Jesse D. McCloud entered a plea of guilty, pursuant to a written plea agreement and stipulation of facts, to one count of possession and distribution of marijuana, and two counts of conspiracy to possess marijuana with intent to distribute, 21 U.S.C. §§ 841(a)(1) and 846. He was sentenced to 105 months' imprisonment[1] On appeal, McCloud contends that the district court erred in its determination of the amount of marijuana attributable to him as part of his relevant conduct, and its determination of his criminal history points. We affirm the district court.
 
 I. Background
 
 2
 The plea agreement and incorporated statement of stipulated facts indicate that defendant ("McCloud"), his brother (Robert McCloud), McCloud's common-law wife Virgena Tow and her cousin Edwin "Butch" Tow, and an employee of McCloud's, David Quinn, were involved in a conspiracy to distribute marijuana in Missouri and Illinois. In January 1995, Quinn was arrested in Texas in possession of 62 pounds of marijuana, which he was picking up for "Mikey Joe," who also happened to be one of McCloud's sources in Missouri. Apparently it was usual, though not always certain, that some or all of the marijuana that Quinn picked up in Texas (he had made at least three trips) for Mikey Joe would eventually find its way to McCloud, Portions of the marijuana might then find its way back to Quinn, when McCloud directed Quinn to deliver it to Butch Tow and several other customers.
 
 
 3
 In April 1995, Tow agreed to cooperate with law enforcement officials. On April 28, 1995 and May 1, 1995, two controlled buys were made by Tow under the surveillance of law enforcement officials, including FBI Special Agent Isaac Bratcher. When Tow telephoned McCloud asking for marijuana, McCloud instructed Quinn to deliver first three, then ten, pounds of marijuana to Tow. McCloud was then arrested. A search warrant was executed at his tuckpointing and construction business, and 15 pounds of marijuana were found on the premises.
 
 II. Discussion
 A. Amount of Drugs Attributable to McCloud
 
 4
 McCloud argues that the district court erred in calculating the amount of marijuana attributable to him. Under United States Sentencing Guidelines (U.S.S.G.) §§ 2D1.1(a)(3), (c)(7), an offense level of 26 is assigned for amounts of marijuana between 100 and 400 kilograms. The government bears the burden of proving by a preponderance of the evidence the quantity of drugs involved in a conspiracy and attributable to defendant. United States v. Beler, 20 F.3d 1428, 1431 (7th Cir.1994); United States v. Fowler, 990 F.2d 1005, 1007 (7th Cir.1993). Quantity is a factual question that the court on appeal will reverse only if the trial court's findings are clearly erroneous. United States v. Claiborne, 62 F.3d 897, 901 (7th Cir.1995). It is "crucial that the information the district court relies on ... [possess] sufficient indicia of reliability to support its probable accuracy." United States v. Acosta, 85 F.3d 275, 282 (7th Cir.1992) (internal quotations omitted)
 
 
 5
 McCloud's written plea agreement and the stipulation of facts incorporated into that agreement specifically stated that the amount of marijuana attributable to him was 175.5 kilograms. Based on information provided by FBI Special Agent Bratcher, the presentencing investigation report (PSI) also calculated McCloud's relevant conduct at 175.5 kilograms of marijuana.[2]
 
 
 6
 Both prior to and at sentencing, McCloud objected to the amount used in the plea agreement and the PSI, arguing that it was based partially on statements to the FBI from codefendant Quinn, who had since recanted his statements about the amount he had delivered for McCloud; that it involved double-counting; and that it could not include the 62 pounds found with Quinn in Texas, since that marijuana had no proven connection to McCloud. The district court found McCloud responsible for 112.8 kilograms of marijuana (instead of the 175.5 figure used in the PSI), which still placed McCloud at a base offense level of 26.[3]
 
 
 7
 1. Written findings.
 
 
 8
 The district court did not make written findings pursuant to Fed.R.Crim.P. 32(c)(3)(D) (requiring that the sentencing court make written findings as to challenged inaccuracies or determinations). See also United States v. Buchanan, 115 F.3d 445, 452 (7th Cir.1997) (we have only upheld sentences "in rare cases" where the district court's "implicit findings seemed sufficient"; "It is always preferable for the district court to expressly state the amount and quantity of drugs upon which the defendant's sentence is based."). Nevertheless, we find that in this case there is sufficient indication in the record, including oral findings made at the sentencing hearing, to explain the basis of the district court's findings. See United States v. Lewis, 117 F.3d 980, 985 (7th Cir .1997) (although specific findings were not made as to the particular amount of drugs for which each defendant would be held accountable, court finds that it can, "upon review of the record, come up with reasons why each defendant" was held accountable for 1.5 kilograms); United States v. Westbrook, 986 F.2d 180, 183 (7th Cir.1993) (district court's failure to attach written findings to the PSI as required by Fed.R.Crim.P. 32(c)(3)(D) is harmless error where "the court made clear on the record the basis for its decision").
 
 
 9
 2. Amount of marijuana attributable to McCloud.
 
 
 10
 The parties discuss eight possible sources of marijuana which might be attributable to McCloud in determining the proper offense level. We conclude, however, that only one of these sources is necessary to determine that over 100 kilograms of marijuana was attributable to McCloud. FBI Agent Bratcher reported that Quinn informed him that he had delivered ten pounds each month for 24 months, which equals 240 pounds or 109 kilograms. The PSI properly relied on this amount in recommending a sentence. See, e.g., United States v. Howard, 80 F.3d 1194, 1204 (7th Cir.1996) (noting that this court has "deemed acceptable" the approach of estimating "the minimum number of times they had purchased crack from [the distributer] and multiplying that figure by what [the probation officer] believed to have been the minimum quantity sold on each occasion"); United States v. Taylor, 72 F.3d 533, 543-44 (7th Cir.1995) (in calculating amount of drugs attributable to defendant, the district court was entitled to multiply approximation of average amount of cocaine delivered by the probable frequency of trips); United States v. Mustread, 42 F.3d 1097, 1102 (7th Cir.1994) (proper to base sentence on defendants' selling 800 pounds of marijuana where that amount fell within the range of 500 and 3,000 pounds estimated by witnesses at trial).
 
 
 11
 McCloud relies on the sentencing hearing testimony of codefendant Quinn, who told the court that he did not recall what statement he had previously made to the FBI, but he now thought that he had delivered only 160 pounds (72.7 kilograms) on behalf of McCloud. The district court stated: "[W]ith respect to the testimony of Mr. Quinn, this Court is going to make a finding that his testimony is not trustworthy I find that, from his appearance and demeanor and the way he responded to questions, it appeared to me that he seemed to be under some kind of duress or some kind of influence that precipitated him doing what he did." We conclude that the district court was entitled to disbelieve Quinn's testimony at the sentencing hearing. See United States v. House, 110 F.3d 1281, 1286 (7th Cir.1997) ("arguments which simply urge a reassessment of a district court's credibility determination are wasted on an appellate court' "), quoting United States v. Molinaro, 877 F.2d 1341, 1347 (7th Cir.1989). Quinn never denied telling the FBI that he had delivered approximately 240 pounds for McCloud. Instead, he testified at the sentencing hearing that he simply could not remember what amount he had mentioned in his statement to FBI Agent Bratcher; could not remember how much marijuana he had delivered to the Tows; and could not remember the amount of marijuana he delivered for McCloud. Moreover, the district court had a strong basis for inferring duress: Quinn recanted his former statements to the investigating law enforcement officers about the amount of marijuana he had delivered for McCloud only after he had spent time housed in the same jail cell with McCloud, where the two men talked about Quinn's upcoming sentencing hearing testimony "all the time." It was during this time that Quinn was instructed by McCloud to write a letter to McCloud's attorney.
 
 
 12
 Thus, the district court had a strong basis for finding that it did not believe the testimony Quinn offered at the sentencing hearing, and we cannot say that this credibility determination is clearly erroneous. See United States v. Burns, 128 F.3d 553, 555 (7th Cir.1997) (defendant "has given us no reason to believe that [the district judge] was obliged to credit his testimony and to disregard his own post-arrest estimates of the drug amounts for which he was responsible"). As a result of this credibility determination, we affirm on the basis that the district court properly rejected Quinn's testimony given at the sentencing hearing, which leaves the 240-pound (109-kilogram) figure used by the PSI and FBI intact.[4] See United States v. Rivera, 6 F.3d 431, 447 (7th Cir.1993) (affirming sentence, despite the possibility of a double-counting problem; "we affirm outright rather than return the issue to the district court because it is clear from the record that [absent the double-counting] the district court ... still would have found Rivera responsible for 15 kilograms of cocaine" based on trial testimony).
 
 
 13
 The district court was also entitled to consider the fact that, as part of the written guilty plea agreement and incorporated stipulations, McCloud admitted that 175.5 kilograms[5] of marijuana were attributable to him. The stipulation does not automatically preclude any later challenge at the sentencing hearing. See, e.g., United States v. Isirov, 986 F.2d 183, 186 (7th Cir.1993) (rejecting the government's argument that the defendant had waived any challenge to the PSI's allegations as to amount of drugs attributable to him by stipulating to those facts in his plea agreement). Nevertheless, a district court is still permitted to consider the defendant's admission in a plea agreement that he was responsible for a certain amount of drugs. Isirov, 986 F.2d at 186 (finding that district court did not rely exclusively on plea agreement stipulations, but also considered "the findings contained in the PSR that were based on investigative reports and statements of cooperating witnesses"). Although a sentencing court is not bound by stipulations contained in a plea agreement, the court need not ignore the stipulations. Id. The court may, "in determining the factual basis for the sentence, ... consider the stipulation, together with the results of the presentence investigation, and any other relevant information." U.S.S.G. § 6B1.4, comment. We also note that McCloud has made no attempt to withdraw his guilty plea, and a sentencing court is entitled to rely on a presentencing stipulation as to the amount of drugs involved or attributable to defendant. Cf. United States v. Dailey, 918 F.2d 747, 748 (7th Cir.1990) ("A stipulation made for trial purposes is no less binding at sentencing."). See United States v. Carmack., 100 F.3d 1271, 1279 & n. 5 (7th Cir.1996) (noting that a subsequent change in law had occurred which might affect a stipulation made as part of the guilty plea; however, although "this would perhaps be cause for withdrawal of a plea agreement, [defendant] has never argued for withdrawal of her plea agreement.").
 
 
 14
 Thus, we conclude that no clear error occurred in determining that the amount of marijuana attributable to McCloud falls within the 100 to 400 kilogram range. McCloud was properly sentenced based on that amount.
 
 B. Criminal History
 
 15
 McCloud also objected to the district court's assignment of criminal history points to him, and a two-point increase for having been on court supervision for a prior offense at the time the marijuana conspiracy began.
 
 
 16
 1. Two points added for two prior convictions.
 
 
 17
 In addition to the undisputed points mentioned in the plea agreement, the probation officer added one point for four combined convictions related to a single traffic-related incident (date of arrest February 15, 1991), including driving on a suspended license, fleeing the police, leaving the scene of an accident, and driving without insurance. McCloud challenged this in his objections to the PSI on the basis that they were minor infractions, but did not raise the issue at the sentencing hearing. Consequently, the district court also added these points.
 
 
 18
 The record contains no official documentation of a conviction on these combined traffic-related offenses. The PSI states that the "court files have been destroyed and the police report is not accessible." Thus, McCloud argues that the government failed to prove there was any conviction, or whether the conviction was for one or more of the four related offenses charged at the time of arrest. See U.S.S.G. § 4A1.2(c). By abandoning the issue at the sentencing hearing, despite repeated requests by the district court that he specify all points he wished to challenge, McCloud has waived the claim on appeal. McCloud's repeated assurances to the district court that he had no further points to raise at the sentencing hearing constituted a waiver, that is, the "intentional relinquishment or abandonment of a known right," United States v. Olano, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), which is "not reviewable, even for plain error," United States v. Penny, 60 F.3d 1257, 1261 (7th Cir.1995). See United States v. Davis, 121 F.3d 335, 337-38 (7th Cir.1997).
 
 
 19
 2. Two points added for overlap of court supervision & charged conspiracy.
 
 
 20
 The district court and the PSI both determined that McCloud had earned two additional criminal history points because he was under court supervision for the February 15, 1991 arrest (the four traffic-related violations) at the time the marijuana conspiracy began in May 1993. See U.S.S.G. § 4A1.1(d). In his objections to the PSI, McCloud argued that there was "no showing that he was under court supervision at the time of the present offense." However, on appeal McCloud has submitted an Order of Court Supervision in the appendix to his appellate brief. It shows he pleaded guilty to DUI and "driving while suspended" on June 1, 1992. The sentence was one year of court supervision, which ended on June 1, 1993. McCloud now relies on the Order of Court Supervision to argue that there is insufficient proof that the conspiracy had begun prior to this date. Again, we find that McCloud waived the issue by choosing not to raise it at the sentencing hearing, and by not submitting the Order of Court Supervision to the sentencing court. See Davis, 121 F.3d at 337-38.
 
 III. Conclusion
 
 21
 For the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The district court later granted in part McCloud's motion filed pursuant to 28 U.S.C. § 2255, based on the admission of McCloud's attorney that he did not file an appeal after McCloud had instructed him to do so. That order permitted McCloud to proceed "as if on direct appeal," and McCloud then filed this appeal, challenging his sentence
 
 
 [2]
 There is also a reference to 174.5 kilogram in the plea agreement, but no explanation as to the one kilogram difference
 
 
 [3]
 Mathematical errors made by the district court cut it much closer to the 100-kilogram cutoff point for Offense Level 26:(1) the district court said that 80 pounds equals 37.3 kilograms, but actually 80 pounds equals 36.3 kilograms; and (2) the district court added 39.5, 27.0, and 37.3, to reach 112.8, when it actually adds up to 103.8 kilograms. (Then subtract one additional kilogram due to the first mathematical error.) Thus, if we were affirming using the figures relied on by the district court, instead of the total amount being 112.8 kilograms, as the district court found, it should have been 102.8 kilograms
 
 
 [4]
 We could also easily include the amount from Mikey Joe's and Mike's "supplies," which was 17.75 pounds (39.5 kilograms); the 3-pound and 10-pound amounts (1.36 and 4.55 kilograms) sold in the controlled buys made by Butch Tow on April 28, and May 1, 1995; and the 15 pounds (6.82 kilograms) seized from McCloud's warehouse when a search warrant was executed on May 1, 1995
 
 
 [5]
 The three sources used to reach the total amount of 175.5 kilograms were: Quinn's statements (109 kilograms); "supplies from Mikey Joe and Mike" (39.5 kilograms); and statements of Butch Tow (27 kilograms)