UNITED STATES of America, Plaintiff–Appellee,

v.

Ignacio MACIAS, Defendant–Appellant.

No. 90–1208.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 2, 1990.

Decided April 18, 1991.

Rehearing Denied May 28, 1991.

Bradley E. Lerman, Asst. U.S. Atty., Morris Pasqual, Office of the U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Jeffrey B. Steinback, Geena D. Cohen, Genson, Steinback & Gillespie, Chicago, Ill., for defendant-appellant.

Before EASTERBROOK, MANION and KANNE, Circuit Judges.

MANION, Circuit Judge.

The defendant, Ignacio Macias, appeals his sentence following a jury verdict which found Macias guilty on three counts of possession with intent to distribute cocaine. Macias raises several objections to the district court's calculation of his sentence under the U.S. Sentencing Commission Guidelines ("Guidelines"). He also objects to an evidentiary ruling at trial and claims the evidence was insufficient for conviction.

Based on our review of the evidence and the sentencing hearing, we affirm the conviction and the sentence applied by the district court.

## I.

In early 1989 agents of an Undercover Task Force of the Drug Enforcement Administration ("DEA") were told by an informant that Enriquez Perez was a dealer in cocaine. The DEA agents had the informant contact Perez to discuss setting up a cocaine purchase. After several conversations, Perez and the informant (who told Perez he simply represented the actual purchaser) agreed that Perez would sell eight kilograms of cocaine to the informant's purchaser at a purchase price of $144,000 ($18,000 per kilogram). They agreed to complete the deal the next morning and the informant agreed to bring his "principal" in the deal. After making the deal with the informant, Perez spoke with Ignacio Macias on the phone. Perez reached Macias by paging him on a beeper that Macias carried. At trial, Perez revealed that he had sold cocaine to the informant about four or five times in the past, and each time his source of supply was Macias. Perez told Macias that he needed eight kilograms of cocaine for the next morning. Macias told Perez that the cocaine would be available.

The next morning Macias met with Perez and explained that he could only deliver five kilograms of cocaine at that time, but that he could deliver the rest later that evening. Perez told Macias that would

have to do and left to break the news to his "clients": the informant and an undercover agent posing as the ultimate purchaser of the cocaine. Perez explained to his "clients" that while he and Macias could deliver only five kilograms at present, he would deliver the remaining three kilograms by about 5:00 p.m. that evening. The "clients" found this agreeable, but first insisted on receiving a sample of the cocaine.

Perez then paged Macias, who drove to meet Perez. Undercover agents later saw him drive Perez to a parked car where the five kilograms of cocaine was secretly stored. Perez entered the parked car alone and, as per Macias' instructions, located the drugs in a secret compartment. He removed one kilogram to use as the sample.

Macias drove Perez back to his apartment where the "clients" received their sample and told Perez that the deal was on. Perez paged Macias who, in response, went up to Perez's apartment, gave Perez the keys to the parked car in which the drugs were hidden, and made arrangements for him and Perez to meet after the deal was completed.

Perez and the undercover agent, followed by the informant, drove to the location of the parked car with the secreted stash. Perez went to the car and retrieved the remaining four kilograms of cocaine from the hidden compartment. Perez then got in the undercover agent's car and gave the agent the cocaine. The agent gave Perez the purchase money. While Perez was counting the money, agents from the Task Force arrested him, seizing a total of 4.8 kilograms of cocaine.

Macias was later arrested at his home. Searches of his house and car uncovered incriminating material including the pagers whose number Perez had called several times to summon Macias during the transaction.

Macias was tried on three counts of conspiracy and possession with intent to sell cocaine. Enriquez Perez and the narcotics officer testified against Macias at trial. The jury found Macias guilty on all three counts of the indictment.

## II.

The sentencing hearing for Macias was held on January 17, 1990. Applying the Guidelines, Judge Nordberg found that the base offense level for the conviction under the indictment was 32, based upon the conspiracy to distribute eight kilograms of cocaine. The judge also determined that Macias committed perjury at trial.[1] Accordingly, Judge Nordberg adjusted the base offense level upwards two levels pursuant to § 3C1.1 of the Guidelines. An adjusted offense level of 34 placed Macias in a sentencing guideline range of 151 to 188 months of incarceration. Judge Nordberg sentenced Macias to a term of imprisonment of 151 months, the most lenient sentence in that range, to be followed by five years supervised release, and ordered him to pay a special assessment of $150. Macias now appeals his conviction and his sentence.

## III.

■ Macias argues that the district court misapplied the Sentencing Guidelines when it established a base offense level built on an amount of cocaine greater than that which Macias was proven to have distributed. Macias contends that he should not have been sentenced based on eight kilograms of cocaine since the amount of cocaine delivered to the undercover agent was only 4.8 kilograms. There is no indication in the record of the sentencing hearing that Macias made any objection to the inclusion of the eight kilograms in the determination of his sentence. Because he

---

1. Macias stated at trial that his relationship with Perez did not involve drugs, that he went to Perez's apartment on the morning of the "transaction" to pick up some mobile telephones, and that he never drove or possessed the stash car. Macias further testified that he had no idea that he was involved in a drug deal. The district court found that Macias lied during his testimony, and accepted the presentence investigation report's recommendation that Macias' proposed sentence be increased by two levels for obstruction of justice. This increase was not objected to at sentencing.

failed to raise an argument before the sentencing court he has waived the issue on appeal. *United States v. Mealy*, 851 F.2d 890, 907 (7th Cir.1988); *United States v. Plisek*, 657 F.2d 920, 924–25 (7th Cir.1981). Even had he not waived the issue, however, the evidence clearly supports the district court's inclusion of the eight kilograms for sentencing purposes. "[P]roof of sentencing factors under the Guidelines by a preponderance of the evidence satisfies due process." *United States v. Ross*, 905 F.2d 1050, 1054 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 172, 112 L.Ed.2d 136 (1990).

Count I of the indictment charged Macias with conspiracy to distribute and to possess with the intent to distribute eight kilograms of cocaine. Macias was convicted on Count I by a jury. Macias' conviction rested on overwhelming evidence presented at trial, including testimony by his partner Enriquez Perez, the narcotics agent who participated in the transaction, and five surveillance agents, as well as telephone records confirming numerous contacts between Macias and Perez at critical points in the transaction.

The evidence showed that Perez arranged to sell eight kilograms of cocaine to a buyer whom the informant claimed to represent, that Perez thereafter telephoned his regular supplier of cocaine, the defendant Macias, who agreed to supply the cocaine on this occasion, and that Perez then telephoned the informant to confirm that the deal was on. The next afternoon, Macias brought Perez to the parked car containing five kilograms of cocaine. Perez removed one kilogram and delivered it to the narcotics agent, telling him that he had four other kilograms to sell. Perez also told the narcotics agent that he could supply three additional kilograms by 5:00 that evening. Macias then delivered the keys to the car to Perez, and Perez and the agent went to pick up four kilograms of cocaine hidden in the car. Based on this evidence, Judge Nordberg was fully justified in concluding that Macias and Perez conspired to supply a total of eight kilograms of cocaine to the undercover narcotics agent.

Contrary to Macias' assertion, the fact that fewer than eight kilograms were ultimately delivered to the undercover buyer does not undermine Macias' sentence. Judge Nordberg correctly calculated Macias' sentence based on the quantity of cocaine that Macias and Perez negotiated to sell—not the quantity of cocaine actually delivered. *United States v. Buggs*, 904 F.2d 1070, 1078 (7th Cir.1990). Citing § 2D1.4 of the Guidelines and Application Note 1 to that section, this court held that where the defendant "negotiated to sell more than he actually sold, the district court was correct in basing its calculation on the amount negotiated." *Id.* at 1078.[2]

As a result of Macias' conspiracy conviction, Judge Nordberg properly looked to § 2D1.4(a) of the Guidelines (Attempt and Conspiracies) in determining the amount of cocaine includable in a sentencing determination for such a conviction. Section 2D1.4(a) states: "If a defendant is convicted of a conspiracy or an attempt to commit any offense involving a controlled substance, the offense level shall be the same as if the object of the conspiracy or attempt had been completed."[3]

The evidence, recited above, clearly supports the precondition that Macias have the wherewithal to supply the remaining amount of cocaine in satisfaction of the conspiracy's objective. The judge had suf-

---

**2.** The holding in *Buggs* did not rest on the premise that the defendant had constructive possession of the three to seven ounces of heroin he agreed to supply. Indeed, the evidence showed that Buggs was unable to obtain the promised heroin. Therefore, the government is not even required to prove that Macias or Perez had constructive possession of eight kilograms of cocaine.

**3.** Application Note 1 to § 2D1.4(a) provides:

If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. However, where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing.

ficient evidence to believe that Macias had every intention and the means of following through with the conspiracy.

■ Macias also asserts that the district court failed to take proper account of mitigating factors which he believes would have justified a downward departure from the Guideline's recommended sentence. Macias believes, in light of these mitigating circumstances, that the district court should have applied the minimum sentence provided in 21 U.S.C. § 841(b)(1)(A)(ii)(II) (the 10–year minimum sentence for violations of the Anti–Drug Abuse Act of 1986), instead of the Guidelines minimum of 151 months.

The transcript of Macias' sentencing hearing reveals that the district court made repeated references to Macias' proffered mitigating factors before assigning its sentence. The district court explicitly and carefully balanced the mitigating factors in the equation (i.e., Macias' youth, his status of husband and father, and that this present conviction was his first) against other factors evident from Macias' crime and circumstances.

> Similarly, the Court has considered ... offense characteristics such as his age, his education and vocational skills, mental and emotional conditions or lack of any particular problems there, physical condition, lack of any drug dependency.... He does have a wife and child.... But in this particular case, it is the Court's opinion the case does not justify any downward departure [from the Guidelines].

Sentencing Hearing Transcript, pp. 34–35.

The judge, in light of all the mitigating circumstances offered by Macias, exercised his discretion and refused to grant a departure, although he did give the lowest sentence allowed within the Guidelines. Such exercise of discretion is not subject to review by this court. *United States v. Franz*, 886 F.2d 973, 978 (7th Cir.1989) ("we do not have jurisdiction to review a district court's decision not to depart from the applicable guideline range...").

■ Macias further argues that the Guidelines "conflict" with the Anti–Drug Abuse Act because the Guidelines prescribe a minimum sentence greater than the minimum sentence set forth in the Anti–Drug Abuse Act. Section 5G1.1 of the Guidelines describes "how the statutorily authorized maximum sentence, or a statutorily required minimum sentence, may affect the determination of a sentence under the guidelines." (Commentary to § 5G1.1 of the Guidelines.)

Section 5G1.1 covers the situation where the minimum of the applicable Guideline range is greater than the statutorily required minimum sentence. In that case, a "sentence may be imposed at any point within the applicable guideline range, provided that the sentence ... is not less than any statutorily required minimum sentence." Section 5G1.1(c)(2) of the Guidelines. The statutory minimum is 10 years. The Guideline minimum, the sentence Macias received, is 12 years and 7 months. Clearly, the sentence handed down by the district court complies with this provision. The relationship between 21 U.S.C. § 841(b) and the Guidelines is provided for in the Guidelines and was properly construed by the district court judge.

■ Macias next contends that the Guidelines are unconstitutional and thus, the reliance upon them as a basis for sentencing is improper. Macias contends that the Guidelines are legislation, having the force and effect of law, and were promulgated in violation of the Presentment Clause of the United States Constitution. In *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), the Supreme Court distinguished the Guidelines from the kinds of legislation commonly passed by Congress which is ordinarily subject to the Presentment Clause. The Court emphasized that the Guidelines are rules of court, and "[C]ongress has undoubted power to regulate the practice and procedure of federal courts, and may exercise that power by delegating to this or other federal courts authority to make rules not inconsistent with the statutes or constitution of the United States." *Id.* at

662, quoting *Sibbach v. Wilson & Co.*, 312 U.S. 1, 9–10, 61 S.Ct. 422, 424–25, 85 L.Ed. 479 (1941) (a case reviewing a challenge to the Rules Enabling Act of 1934 which conferred upon the judiciary the power to promulgate federal rules of civil procedure).

In reviewing the constitutionality of the Sentencing Guidelines, the Court held:

> The Constitution's structural protections do not prohibit Congress from delegating to an expert body located within the Judicial Branch the intricate task of formulating sentencing guidelines consistent with such significant statutory direction as present here.... Accordingly, we hold that [the Guidelines and its authorizing Enabling Act are] constitutional.

*Mistretta*, 109 S.Ct. at 675. Therefore we hold, consistent with *Mistretta*, that the Guidelines, as constitutionally delegated rulemaking, are not subject to the Presentment Clause.

■ Lastly, Macias complains about the introduction in evidence of his prior criminal activity with Perez in Perez's courtroom testimony. Federal Rule of Evidence 404(b) generally prohibits the introduction of character evidence relating to a defendant's past crimes, wrongs or acts to show its conformity with the activity which is the subject of current litigation. Rule 404(b), however, contains a proviso which permits the introduction of such evidence for other purposes such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Fed.R.Evid. 404(b).

Macias did not object at trial to the admission of the 404(b) evidence. Because Macias failed to make timely objection at trial, he has waived his objection on appeal to the introduction of the 404(b) evidence. See Fed.R.Evid. 103(a), and *United States v. Wynn*, 845 F.2d 1439, 1442 (7th Cir. 1988).

Nor did the introduction of the evidence constitute plain error. *United States v. Laughlin*, 772 F.2d 1382, 1392 (7th Cir. 1985). The judge was careful to alert the jury to its duty in evaluating Perez's evidence *prior* to the introduction of Perez's testimony. The judge instructed the jury that the "defendant may only be tried for the charges set forth in the indictment. The following evidence involved claimed or alleged actions prior to the time of the indictment is admitted in evidence only on a limited basis. It may be considered and used by you only as evidence of the defendant['s] ... intent, plan and knowledge.... So you should not consider this evidence for any other purpose." (Tr. 155) (Appellee's Br. p. 34).

The evidence offered by Perez was highly probative to show the working relationship between Macias and Perez and to prove Macias' specific intent to distribute cocaine. This, of course, satisfies the condition of 404(b)'s proviso that past act evidence relate to the defendant's intent, knowledge and plans respecting the present object of litigation. Moreover, Perez's testimony was brief and non-inflammatory in nature, reducing any risk that the jury's emotion would be stirred by such evidence and that they would, as a result, be compelled toward irrationality and the defendant thus prejudiced. See *United States v. Potts*, 840 F.2d 368, 372 (7th Cir.1987). It was not plain error for the district court to admit Perez's testimony about his past criminal association with Macias.

■ Lastly, Macias makes the desperate assertion that the evidence presented at trial was insufficient to support the jury's guilty verdict. Our standard of review of a jury's verdict requires us to view all the evidence in the light most favorable to the government and to make all reasonable inferences to be drawn therefrom, and if there is substantial evidence supporting the guilty findings, the conviction will be affirmed. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). As this court has stated: "Only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict." *United States v. Redwine*, 715 F.2d 315, 319 (7th Cir.1983).

Without recapitulating the facts of this case, we find that there was substantial evidence offered from a number of sources permitting the jury to make the finding it did. Macias' participation in the drug transaction was confirmed by a number of narcotics agents who performed surveillance work, by the undercover agent and by his business partner Perez. It is the strict province of the jury to determine witness credibility. Based on the volume of the information the jury received concerning Macias' involvement coupled with the inviolability of the jury's credibility determinations, we let stand the jury's verdict.

For all the foregoing reasons the district court's decision in all respects is

AFFIRMED.