947 F.2d 948
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff/Appellee
v.
Anastacio AGUIRRE-ALVARADO, Defendant/Appellant,.
 No. 90-2582.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 10, 1991.*
Decided Oct. 24, 1991.
 
 Before BAUER, Chief Circuit Judge, and EASTERBROOK and MANION, Circuit Judges.
 
 ORDER
 
 1
 Anastacio Aguirre-Alvarado pleaded guilty to one count of knowingly and intentionally distributing approximately one kilogram of cocaine in violation of 21 U.S.C. § 841(a)(1). In calculating Aguirre's sentence pursuant to the sentencing guidelines (guidelines), the district court established Aguirre's base offense level according to the quantity of cocaine he had negotiated to sell. Aguirre now appeals the sentencing decision, arguing that the court misapplied the guidelines.
 
 
 2
 In January 1990, Orlando Ramos agreed to sell Humberto Flores (a Drug Enforcement Agency (DEA) agent posing as a narcotics trafficker) three kilograms (kilos) of cocaine. Ramos told Agent Flores that Flores would have to deal with Ramos's source, Miguel Acosta. The agreed-to sale did not materialize when first planned, but negotiations for a sale continued with Flores dealing directly with Acosta while Ramos dropped out of the picture. After extended discussion and negotiation, which included several failed attempts to consummate a sale of cocaine, Flores and Acosta finally agreed to close a five kilo cocaine transaction.
 
 
 3
 On February 5th Flores (who was wearing a wire) and Acosta met as planned, and drove to Anastacio Aguirre-Alvarado's apartment where Aguirre and a one kilo cocaine sample awaited Flores. After Flores tested the cocaine, the following conversation occurred.
 
 
 4
 Flores: Okay. Then we will settle everything (unintelligible). You and I are. Are they all alike?
 
 
 5
 Aguirre: All of them. (unintelligible) They are all coming. The same, as they all come. Sealed they all have the same merchandise (unintelligible) because everything is the same as that, see....
 
 
 6
 Flores: (unintelligible) Is it good?
 
 Aguirre: I don't know. (unintelligible)
 
 7
 Flores: Not for now, for tomorrow.
 
 
 8
 Aguirre: Okay.
 
 
 9
 The next day Flores and Acosta returned to Aguirre's apartment. Flores waited outside while Acosta went upstairs to Aguirre's apartment. Acosta and Aguirre emerged from the apartment and spoke with Flores:
 
 
 10
 Acosta: Now we have to pay for the one we opened yesterday and then they will bring the other four.
 
 
 11
 Aguirre: They will be here shortly. These guys do, place.... They do this because.... [Unintelligible]. I told.... [Unintelligible]. Yesterday.
 
 
 12
 Acosta: [Unintelligible] But they didn't want to give them to him because they thought he was not going to pay for this one.
 
 
 13
 Aguirre: Yes.
 
 
 14
 Acosta: But if you give me the money, I will....
 
 
 15
 Flores: No, brother. I won't move the money, I won't move anything, I don't work that way. I came this way ... I will buy the five from you.
 
 
 16
 Flores left to contact his supervisor for instructions on how to act on the proposed two-tiered transaction. Meanwhile, Aguirre returned to the apartment, and Acosta waited outside for Flores to return. When Flores returned he told Acosta that he wanted the one kilo and that he would wait for the rest. Acosta went into Aguirre's apartment building and returned moments later with the cocaine. DEA surveillants arrested Acosta, then entered the apartment and arrested Aguirre.
 
 
 17
 A grand jury indicted Aguirre on one count of conspiring to possess five kilos of cocaine with intent to distribute, and on one count of knowingly and intentionally distributing approximately one kilo of cocaine. Aguirre initially pleaded not guilty, but he withdrew that plea the day before his trial and pleaded guilty to knowingly and intentionally distributing the cocaine; the government, in turn, dismissed the conspiracy count.
 
 
 18
 At the sentencing hearing the district court determined that Aguirre's base offense level under the guidelines should be calculated at the level required for offenses involving five kilos of cocaine. The court based this finding on the transcripts of the tapes that Flores developed on the days of the cocaine transaction. Specifically, the court found the conversations set forth above to show 1) that Aguirre had remarked to Flores that more kilos similar in quality and packaging would be arriving, and 2) that Aguirre participated in explaining to Flores that the deal would be two-tiered--that is, Flores could buy one kilo and then four more kilos would follow in forty minutes. From this the court concluded that, looking at the transcript as a whole, Aguirre participated sufficiently in the negotiation for five kilos to hold him accountable for the full amount. The court sentenced Aguirre to a term of 97 months imprisonment, which he now appeals.
 
 
 19
 Aguirre contends that the district court misapplied the guidelines when it established a base offense level built on an amount of cocaine greater than that which Aguirre actually distributed. Aguirre argues that under Application Note 1 following guidelines section 2D1.4 he "was not reasonably capable of producing" the additional four kilos of cocaine, and that the sentencing court should have excluded these four kilos from the guideline calculation.
 
 
 20
 Our standard of review requires us to uphold the trial court's sentence if "the guidelines were correctly applied to findings of fact that were not clearly erroneous." U.S. v. Voprovil, 891 F.2d 155, 157 (7th Cir.1989); see U.S. v. Cooper, Nos. 90-1677 and 90-2523, slip op. at 9 (7th Cir. Sept. 11, 1991).[1]
 
 
 21
 "[I]it is clear that, under the guidelines, the amount of narcotics involved in a transaction is the amount negotiated." U.S. v. Buggs, 904 F.2d 1070, 1079 (7th Cir.1990). The district court, therefore, correctly calculated Aguirre's sentence based on the amount of cocaine he negotiated to sell--not the amount he actually delivered. U.S. v. Macias, 930 F.2d 567, 570 (7th Cir.1991). The court would have been restricted to the amount actually sold only if the defendant did not intend to or could not produce the negotiated amount. Application Note 1 § 2D1.4(a);[2] see, e.g., U.S. v. Ruiz, 932 F.2d 1174, 1184 (7th Cir.1991) (single statement that "Even ten more I can get" is insufficient evidence of intent to raise the base level offense). This exception precludes using the negotiated amount as a basis for sentencing when a defendant makes offhand statements of puffing or braggadocio about how much drugs he can get his hands on. Ruiz, 932 F.2d at 1184.
 
 
 22
 The law in this case is clear, which leaves us with the sole question of whether the court committed clear error by determining that the government proved by a preponderance of the evidence, Macias, 930 F.2d at 570, that Aguirre personally intended to participate and was capable of participating in distributing to the DEA agent five kilos of cocaine. We find it did not.
 
 
 23
 Aguirre's involvement in the negotiation of five kilos of cocaine exceeded hollow statements of braggadocio. Aguirre participated in arranging the details (quality, delivery, payment) of a drug deal "but was ... charged for a smaller amount of drugs because the pinch was made before the larger deal could be completed." Ruiz, 932 F.2d at 1184.
 
 
 24
 The district court's findings bear out this conclusion. At sentencing, the court heard argument on whether Aguirre agreed with Acosta to sell five kilos to agent Flores. The court read the transcripts of conversations that occurred during the transaction. The court also considered the differing interpretations of Aguirre's remarks made in the conversation. The court took these remarks to refer to the quality of the drugs, the delivery arrangement for the drugs, and the payment arrangement for the drugs. Aguirre's comments, the court concluded, pointed to his involvement in and ability to carry out a five kilo cocaine transaction.[3]
 
 
 25
 The court resolved disputed facts against Aguirre; we must give due deference to those conclusions. U.S. v. Ross, 905 F.2d 1050, 1055 (7th Cir.), cert. denied, 111 S.Ct. 172 (1990). The district court's findings and sentencing decision were not clearly erroneous. The sentence is therefore
 
 
 26
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). Appellant/Appellee has filed a statement requesting oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record
 
 
 [1]
 18 U.S.C. § 3742(e) requires this standard:
 The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.
 
 
 [2]
 Application Note 1 to § 2d1.4(a) provides:
 If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. However, where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not capable of producing.
 
 
 [3]
 Aguirre also intimates that he used five kilos as a negotiation point because the DEA agent insisted on buying that quantity, not because he ever intended or was able to produce that quantity. This contention, however, merely quarrels with the district court's factual conclusions. As stated in the text the court found that Aguirre not only agreed to a five kilo transaction but that he also actively participated in executing a transaction for that amount. This is all the court needed to consider. See U.S. v. Macias, 930 F.2d 567 (7th Cir.1991)