968 F.2d 1219
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff/Appellee,
v.
Taurino PENA, also known as Tito, and Arturo Pena,
Defendants/Appellants.
 Nos. 91-3097, 91-3098.
 United States Court of Appeals, Seventh Circuit.
 Argued June 17, 1992.
Decided July 8, 1992.
 
 Before CUMMINGS, POSNER, and MANION, Circuit Judges.
 
 ORDER
 
 1
 Stepbrothers "Tito" and Arturo Pena pleaded guilty to distributing two kilograms (kilos) of cocaine. The court sentenced them based on the fifteen kilos that they had negotiated to sell but failed to deliver because they were arrested before they had completed the deal. The Penas objected that they were not reasonably capable of producing fifteen kilos, but that they had used that figure to entice the undercover agent to purchase the two kilos which they actually did deliver. The court did not accept this argument, and we affirm.
 
 
 2
 Undercover police officer Raphael Tovar learned that the Penas were selling cocaine. Tovar, wearing a wire, met with Tito to try to buy some cocaine. He asked Tito if he could buy ten kilograms. Tito told him that he could get up to twenty kilos, although twenty was the limit; they agreed that Tito would sell Tovar fifteen kilos of cocaine. When Tito, accompanied by Arturo, met with Tovar, Tito gave him two kilos and told him that the supplier (a man named Enrique) would give him the other thirteen kilos after Enrique had seen the money. Tovar offered to show Tito the money so that he could assure Enrique that Tovar could pay. Tito, however, wanted to take the money to show Enrique, who, he assured Tovar, had enough cocaine to supply the thirteen missing kilos.
 
 
 3
 After Tito phoned Enrique, Tovar and the Penas drove to Enrique's house. At the house Tito wanted to take the money to show Enrique. Tovar, however, insisted that Enrique come out to the car to personally complete the deal. Tito carried this message inside to Enrique, while Tovar stayed outside with Arturo. While they were waiting, Arturo reassured Tovar that he had seen the fifteen kilos and that Tovar would not have to buy his cocaine piecemeal because he and his brother always sold their drugs all at once. Tito returned and told Tovar that Enrique insisted on seeing the money first. Tovar insisted on keeping the money. Since they were apparently at an impasse, Tovar finally offered to settle for two kilos. Tito tried to salvage the sale and insisted that he could get the other thirteen kilos. Tovar asked Tito if there was any way that Enrique would change his mind about seeing the money. This time Tito said "no," but that he would deliver the additional amount himself. Tovar then arrested the Penas, ending the negotiations.
 
 
 4
 The Penas pleaded guilty to one count of distributing approximately two kilos of cocaine in violation of 21 U.S.C. § 841(a)(1). At the sentencing hearing the court determined that it would sentence the Penas based on fifteen kilos, as that was the amount they had negotiated to sell and would thus be the amount aggregated for sentencing. The court based its determination on several findings. It found that the Penas had agreed with Tovar to sell fifteen kilos of cocaine. Also, the court noted that the Penas repeatedly told Tovar that they had seen the fifteen kilos in Enrique's possession. The court further found that the Penas discussed fifteen kilos even after they already had sold two kilos to Tovar. Finally, they urged Tovar to show the money to Enrique so that the total sale could be completed. The court concluded that the consistent cajoling showed that the Penas "went through an elaborate method to try and close the deal." Sentencing Tr. at 185.
 
 
 5
 The Penas stood on Tito's testimony to argue that they had been new to the drug-dealing business, and that they had not been prepared to sell fifteen kilos. Rather, they argued, boasting about fifteen kilos was a negotiation gimmick that they used in the hope of getting Tovar to buy two kilos. The court rejected this testimony for two reasons. First, it found that Tovar never indicated throughout the negotiations that he would have accepted anything less than fifteen kilos of cocaine. Tito, therefore, had no reason to believe that puffing about fifteen kilos would wheedle Tovar into buying two kilos. Second, the court found that Tito's discussions with Tovar belied his claim to being a greenhorn; Tito talked the language of a drug dealer and knew the mechanics of a drug deal. From this the court concluded that, looking at the transcript as a whole, the Penas intended and were able to produce the full fifteen kilos of cocaine.
 
 
 6
 We review for clear error the court's determination of the amount of drugs used for sentencing. United States v. Voprovil, 891 F.2d 155, 157 (7th Cir.1989). "[I]t is clear that, under the guidelines, the amount of narcotics involved in a transaction is the amount negotiated." United States v. Buggs, 904 F.2d 1070, 1079 (7th Cir.1990). The exception to this rule is that the court should sentence defendants based on the amount of drugs actually sold when they did not intend nor were they able to produce the negotiated amount. U.S.S.G.s 2D1.4(a) comment. n. 1; e.g., United States v. Ruiz, 932 F.2d 1174, 1184 (7th Cir.1991). This exception bars use of the negotiated amount as a basis for sentencing when a defendant makes offhand statements of puffing or braggadocio about how much drugs he can acquire. Id. at 1184.
 
 
 7
 The sole question before us is whether the court committed clear error by determining that the government proved by a preponderance of the evidence, United States v. Macias, 930 F.2d 567, 570 (7th Cir.1991), that the Penas intended and were able to produce the fifteen kilos of cocaine that they negotiated to sell. The Penas' involvement in the negotiation for fifteen kilos of cocaine exceeded hollow statements of braggadocio. The facts bear out the court's conclusion that the Penas went to great lengths to perpetuate the planned drug deal. The only barrier to completing the deal was the standoff between Tovar and the supplier (Enrique). Tovar refused to unilaterally show Enrique the money. Enrique, in turn, refused to display the fifteen kilos without first seeing the money. Even in the face of this barrier the Penas tried to complete the deal. They wanted to close the deal, it's just that the "the pinch was made before the larger deal could be completed." See Ruiz, 932 F.2d at 1184.
 
 
 8
 The Penas were forced to counter the government's proof with Tito's weak testimony. The court identified two problems with Tito's testimony: why construct such an elaborate ruse if they were dealing only two kilos; and why did Tito seem so sophisticated in drug deals if this was his first attempt? Other problems existed as well. For instance, Tito claimed that he was crowing about fifteen kilos in order to get a deal for two kilos. The Penas, though, would have had a sale for two kilos if they had ended negotiations right after their initial delivery. Instead, Tito suggested that they drive to Enrique's house in hopes of increasing the amount of the sale to fifteen kilos. Later, well into the negotiations, Tovar said that he would settle for two kilos. Tito, though, insisted that they continue talking until they completed the fifteen-kilo sale. Tito even offered to get the cocaine himself when it started to look like the deal might end as a two-kilo sale. After the Penas were arrested, one of them said to Tovar: "Why didn't you wait for the whole fifteen?" Sentencing Tr. at 185. Taking these factors together the court concluded that the Penas made every effort to execute the deal for fifteen kilos. The court resolved disputed facts against the Penas; we give due deference to those credible conclusions. United States v. Ross, 905 F.2d 1050, 1055 (7th Cir.1990).
 
 Conclusion
 
 9
 For the foregoing reasons, we conclude that the district court correctly applied the Guidelines when sentencing Taurino and Arturo Pena. The tapes of the negotiations coupled with the court's credibility determinations of the witnesses indicate that the court's finding that the Penas were reasonably capable of participating in and completing a fifteen-kilogram transaction were not clearly erroneous. The sentence is
 
 
 10
 AFFIRMED.