# In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-1197

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JEREMY FISH,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 03-CR-67—**William C. Griesbach**, *Judge.*

———————

ARGUED SEPTEMBER 15, 2004—DECIDED NOVEMBER 3, 2004

———————

Before EVANS, WILLIAMS, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Jeremy Fish pled guilty to a charge of assault with a dangerous weapon and was sentenced to 37 months' imprisonment. In this appeal, he challenges pre-trial rulings made by the district court that precluded his presentation of a defense based on the theory of entrapment by estoppel. Fish also appeals the district court's denial of his motion for a downward departure at sentencing. We find no merit to either of Fish's contentions and affirm the judgment and sentence of the district court.

## I.  Background

Fish is a Native American and a member of the Menominee tribe. At the time of the incidents giving rise to this case, he lived on the Menominee Indian Reservation in northern Wisconsin. On March 20, 2003, Fish and his brother were involved in a physical altercation on the reservation that ended when Fish discharged a shotgun at his brother, striking him just below the left knee and causing serious injury. On April 1, 2003, a grand jury returned a one-count indictment charging Fish with assault with a dangerous weapon pursuant to 18 U.S.C. § 133(a)(3).

Prior to trial Fish filed a motion to dismiss the indictment based upon the affirmative defense known as entrapment by estoppel. Such a defense is available when a government official has actively misled a defendant into a reasonable belief that his or her charged conduct is legal. *United States v. Neville*, 82 F.3d 750, 761 (7th Cir. 1996). In support of his motion, Fish focused not upon his own personal situation or the crime he allegedly committed, but rather upon his analysis of the historical relationship between the Menominee Indian tribe and the United States government. Fish's motion noted that in 1954, the government terminated its official recognition of the tribe, only to restore official recognition in 1973 with passage of the Menominee Restoration Act, 25 U.S.C. § 903-903f. Fish argued that the process of termination followed by restoration of recognition worked an injury to the collective psyche of the Menominee tribe, the net result of which was rampant crime and lawlessness on the reservation. Compounding this problem, in Fish's view, was the failure of the Department of the Interior to establish a democratic form of government on the reservation following the restoration of tribal recognition. Thus, his motion argued, Fish was born into a culture of pervasive violence and disrespect for the rule of law that was created and fostered by flawed governmental policy. In this roundabout way, Fish argued that the government had "entrapped" him into shooting his brother.

At the pretrial conference held on September 11, 2003, the district court denied Fish's motion to dismiss, holding that his entrapment by estoppel defense failed because he had produced no evidence demonstrating a link between his allegedly criminal conduct and any assurances or misrepresentations made by governmental agents. The court went on to hold that based upon the lack of any evidence tending to support a defense of entrapment by estoppel, the court would not permit such a defense to be presented to the jury at trial.

On October 8, 2003, Fish pled guilty to the charge in the indictment, while reserving his right to appeal the denial of his motion to dismiss. Prior to sentencing, Fish filed a motion for a ten-level downward departure, citing the "totality of the circumstances" pursuant to U.S.S.G. § 5K2.0. The circumstances cited in support of the motion concerned the hardships Fish had endured throughout his life: a history of physical and psychological abuse suffered at the hands of his older brother, abandonment by his mother, and the violent and economically bleak living conditions on the reservation. Fish also argued that despite this troubled upbringing, he had emerged a peaceful, law-abiding person and that the crime he committed was a sharp deviation from his normal pattern of behavior.

At the sentencing hearing, after allowing the parties to debate the merits of the downward departure motion, the district court held that: "Downward departures are authorized, but for stated purposes. I was unable to find a totality of the circumstances exception or basis for downward departure . . . I'm satisfied that the sentencing guidelines ought to be followed in this case, and the basis for a downward departure is simply not here." The court proceeded to sentence Fish to the lowest term of imprisonment available in his prescribed guideline range, 37 months, to be followed by a three-year period of supervised release. The court also ordered Fish to pay $72,717.66 in restitution to the victim.

## II. Discussion

### A. Entrapment by Estoppel

Fish's first contention on appeal is that the district court erred in denying his motion to dismiss and/or precluding him from introducing evidence at trial to support a defense of entrapment by estoppel. As noted briefly above, the defense is available to those defendants proving that a government official, acting with actual or apparent authority, affirmatively assured or actively misled the defendant into a reasonable belief that certain conduct was legal. *Neville*, 82 F.3d at 761. The defendant must actually rely upon the official's assurances in choosing his or her course of conduct, and such reliance must be reasonable in light of "the identity of the agent, the point of law represented, and the substance of the misrepresentation." *Id.* In short, the defendant must have a reasonable belief that he is acting "pursuant to official authorization" to commit the crime or crimes with which he has been charged. *Id.* Given this rigorous standard, we have characterized entrapment by estoppel as a defense that is "rarely available." *Id.*

As a prerequisite for presenting an entrapment defense to the jury, the defendant must produce sufficient evidence from which a rational jury could infer that he was entrapped into committing the crime charged. *United States v. Santiago-Godinez*, 12 F.3d 722, 727 (7th Cir. 1993). Where the evidence proffered is insufficient as a matter of law to support the defense, a district court does not err in making a pretrial ruling precluding the presentation of the defense at trial. *Id.* A district court's ruling in this regard is reviewed *de novo. Id.* at 726.

Fish argues on appeal, as he did to the district court, that his entrapment by estoppel defense is supported by the pervasive environment of lawlessness and violence existing on the reservation that was fostered by inconsistent government policies concerning the recognition of the Menominee tribe and the form of government existing there.

We need not debate or discuss the merits of Fish's historical, sociological, and psychological analysis because his argument misses the point entirely. In order for the defense of entrapment by estoppel to arguably apply, Fish must identify *a person or persons*, cloaked with the actual or apparent authority of a governmental entity, who actively assured him that shooting his brother in the leg with a shotgun was a legal activity. It will not suffice to allege (or even prove) that "the government," in the abstract, has pursued policies that have unintentionally contributed to an inordinately high crime rate in a given community. One can easily imagine the disastrous results that would flow from an extension of the entrapment defense to such an extreme. Contrary to Fish's position, the defense is specific to the state of mind of the defendant and the crime with which he has been charged. Fish has not identified a government official with whom he had contact, he has not identified the substance of a misrepresentation of the law made by such an official, nor has he even suggested that he mistakenly believed his conduct to have been lawful. As a result, the district court did not err in concluding that the evidence was insufficient as a matter of law to support the affirmative defense, and the court properly denied Fish's motion to dismiss and precluded the presentation of the entrapment defense at trial.

## B. Downward Departure

Fish contends that the district court erred in denying his motion for a downward departure, but the substance of his argument is difficult to track. As we understand his position, Fish is contending that by virtue of the district court's pretrial ruling barring presentation of his entrapment defense, he was *de facto* prohibited from arguing *at sentencing* that his "cultural heritage" was a factor to be considered as

a basis for downward departure.[1] Fish, in reference to the court's ruling at the pretrial conference, states in his brief: "from this point on, counsel for Appellant was disallowed to submit to the court any information concerning Appellant's cultural heritage." Fish chooses not to elaborate exactly how the district court's pretrial ruling effectively "disallowed" any such argument in connection with *sentencing* proceedings. In fact, the district court made no such ruling.

At the pretrial conference, the court held that Fish had proffered insufficient evidence to permit the presentation of his entrapment by estoppel defense at trial. This holding was, in turn, based upon the court's conclusion that Fish's evidence had failed, as a matter of law, to meet several necessary elements of the defense. Whether Fish's historical and sociological analysis concerning the collective psyche of the Menominee tribe met the criteria for establishing a defense of entrapment by estoppel is unrelated to the question of whether the district court would later consider this factor at sentencing.[2] The district court's pretrial ruling simply cannot be construed as a preemptive limitation on the arguments that Fish could raise, or that the court would consider, in support of a motion for a downward departure

---

[1] Although it is not immediately clear from the appellate briefs, we assume that the "cultural heritage" Fish wished the district court consider was the same history of government policy concerning the Menominee tribe that he had advanced as the basis for his entrapment defense.

[2] For a discussion of this circuit's view on the appropriateness of considering "cultural heritage" in connection with sentencing proceedings, see *United States v. Guzman*, 236 F.3d 830 (7th Cir. 2001). As indicated in *Guzman*, whether a defendant's "cultural heritage" is a permissible consideration under the Sentencing Guidelines is an unsettled question. *Id.* at 833. Here, as in *Guzman*, we need not decide this question in the context of the present dispute. *Id.*

at sentencing. Obviously, at the time of the pretrial conference, Fish had not yet been convicted of any crime, and any discussion of sentencing factors would have been inappropriate and premature. The district court most certainly did not forbid Fish from attempting to raise the issue of "cultural heritage" in support of a request for downward departure.

An examination of Fish's brief in support of his motion for downward departure and the transcript of the sentencing hearing reveals that Fish did not, in fact, make his "cultural heritage" argument to the district court at sentencing. In fact, the phrase "cultural heritage" appears nowhere in the district court record and was utilized for the first time in Fish's appellate brief. Arguments that are not raised before the sentencing court are waived for purposes of appeal. *United States v. Macias*, 930 F.2d 567, 569-70 (7th Cir. 1991). Fish may not argue on appeal that the district court failed to consider sentencing factors that it was never asked to consider.

The arguments that Fish actually *did* raise in support of his motion for downward departure were the physical abuse inflicted by his brother, abandonment by his mother, the bleak living conditions on the reservation, and the behavioral anomaly of Fish's criminal conduct in light of his generally law-abiding and peaceful nature. In his motion for a downward departure, Fish argued that these factors, viewed together, comprised a "totality of the circumstances" that should entitle him to a ten-level downward departure from the prescribed sentencing range. The district court considered these arguments and declined to downwardly depart, holding that it "was unable to find a totality of the circumstances exception or basis for downward departure . . . and the basis for a downward departure is simply not here."

A district court's refusal to grant a downward departure is unreviewable as long as the sentencing judge understood

his authority to depart and exercised his discretion in refusing to do so. *United States v. Payton*, 198 F.3d 980, 984 (7th Cir. 1999). Where "the district court recognizes its authority to depart under the guidelines but in an exercise of its discretion chooses not to do so, an appellate court lacks jurisdiction to review that decision." *United States v. Johnson*, 289 F.3d 1034, 1043 (7th Cir. 2002). There is no indication in this record that the district court was acting with a mistaken understanding that it was unable to downwardly depart from the guidelines or precluded from giving consideration to Fish's arguments. Rather, the court considered and ultimately chose to reject Fish's position that a downward departure was appropriate in his case. As a result, we lack jurisdiction to consider the merits of any claim regarding the appropriateness of a downward departure, and we affirm the district court's sentence.

For the foregoing reasons, we AFFIRM the judgment of conviction and sentence.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*