# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 8, 2013

No. 12-11103

Lyle W. Cayce
Clerk

VINEWOOD CAPITAL, LLC,

Plaintiff- Appellant,

v.

DAR AL-MAAL AL-ISLAMI TRUST; ZIAD RAWASHDEH; KHALID
ABDULLA-JANAHI,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:06-cv-00316

Before DAVIS, JONES, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Plaintiff Vinewood Capital, LLC, (Vinewood), appeals from a dismissal on summary judgment of its claims against defendants of breach of contract, negligent misrepresentation, promissory estoppel, and fraud.  We affirm.

I.

Vinewood filed this suit against the defendants to enforce an alleged oral contract to invest $100 million in real estate projects promoted by Vinewood.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-11103

Defendant Dar Al-Maal Al-Islami Trust (DMI) is an Islamic financial institution based in Geneva, Switzerland that operates banks and investment vehicles conforming with Islamic law. Defendant Ziad Rawashdeh was DMI's Chief Operating Officer and defendant Khalid Abdullah-Janahi was its CEO. DMI was represented during the relevant periods by attorney James McGuire.

The principals of Vinewood, James Conrad, Laird Fairchild and Wendel Pardue, were previously employed by Overland Capital Group, Inc. (Overland). Overland had a business relationship with DMI, whereby Overland located real estate investment opportunities for investment by DMI affiliates. After DMI purchased property, Overland managed it for DMI's affiliates. Before working at Overland, Conrad had previously been associated with Fairfield Residential LLC (Fairfield). DMI had invested in several Fairfield projects. Vinewood's counsel is Geoffrey Harper.

In March 2004, Overland terminated the employment of Conrad, Fairchild and Pardue. According to Conrad, they were terminated for raising questions about whether Overland was complying with federal tax law. In April 2004, Fairchild and Pardue filed a wrongful termination action against Overland and a DMI affiliate in Texas State Court (2004 Texas Action). On June 19, 2004, Conrad traveled to Geneva, Switzerland for a meeting with Rawashdeh and Abdulla-Janahi to settle the 2004 Texas Action.[1] Plaintiff relies heavily on oral promises defendants made at that meeting to support their claim.

The parties agree that a preliminary agreement was reached in Geneva to settle the 2004 Texas Action. The settlement would include (i) a settlement payment to Conrad, Fairchild and Pardue and mutual releases from liability;

---

[1] According to Vinewood, DMI desired to settle the dispute between Overland and Conrad, Fairchild and Pardue because their firings left no one at Overland who knew the status of DMI's investments or who had the experience to manage the existing real estate portfolio.

and (ii) an agreement that an affiliate of DMI would loan a new company (which was later formed as Vinewood) $2.5 million in start-up capital. According to Conrad, Rawashdeh and Abdulla-Janahi also agreed that DMI would start a new business relationship with Vinewood in which DMI committed to fund $100 million in real estate investments in the coming year. Under the oral agreement, Vinewood's fees related to those projects would be the same as those being paid to Overland. If necessary, Vinewood would take over asset management of new projects and properties then being managed by Overland, also under the same fee arrangement as those earned by Overland. According to the defendants, DMI agreed only to consider future investment projects that Vinewood might present to them.

After the June meeting, the parties and their attorneys began to exchange correspondence and draft agreements to document the agreements reached in Geneva. The writings consistently included references to the items agreed to as part of the settlement of the Texas Action – a settlement payment and mutual releases, and a loan to Vinewood. In contrast, the language in the correspondence and draft agreements (both from plaintiff to defendants and from defendants to plaintiff) used to describe DMI's obligation to invest in Vinewood real estate projects was inconsistent with Conrad's version of the alleged oral agreement perfected in Geneva.

On June 25, 2004 (less than one week after the Geneva meeting), Vinewood's counsel, Harper, sent a letter to McGuire, counsel for DMI, following up on the meeting with a "proposal (with accompanying support) of how to resolve all of the issues between our clients." That "Proposed Business Plan" describes the business arrangement between Vinewood and DMI as follows: "DMI and its related entities would have a right of first refusal on all proposed real estate transactions. Vinewood would request an exclusive right to represent DMI related entities on investments in US real estate." It also contains a

disclaimer regarding the profit projections which references a potential investor's decision whether to invest. Two earlier versions of the "Proposed Business Plan" were circulated by Pardue to Harper, Conrad and other parties on June 24, 2004. There was no mention of a commitment to fund real estate investments in any of these drafts. McGuire responded on August 16, 2004, in an email, which states that DMI will enter an "Agreement to consider (only) all deals brought to it by Conrad." None of the correspondence or preliminary drafts of agreements the plaintiff sent the defendants' representatives refer, even obliquely, to a commitment by the defendants to invest in a specified amount of real estate projects to be generated by the plaintiff. The same is true of the correspondence from defendants' representatives to plaintiff.

The agreements that were signed by both parties also belie any oral commitment by the defendants to invest in real estate projects generated by the plaintiff. The first instrument executed by the parties was a memorandum of understanding related to a future Financing Agreement which was signed on September 3, 2004 (the Financing MOU). The Financing MOU confirmed the agreement by DMI to make the $2.5 million start up loan to Vinewood.[2] It also had provisions about a future business relationship with the plaintiff. But rather than committing DMI to invest in projects brought to it by the plaintiff, the instrument secured to DMI the first right of refusal on all real estate investments Vinewood presented to it. Relatedly, DMI also agreed to consider in good faith all potential transactions Vinewood brought to it. Finally, and completely inconsistent with a commitment, the instrument stated that DMI would "have no obligation whatsoever to participate or become involved in such transactions." Rather "[DMI] (or a related company) shall have complete and

---

[2] The Financing MOU was actually executed on behalf of Nexus, a DMI affiliate. All parties agree that the agreement was on behalf of DMI and this opinion shall treat DMI or the defendants as parties to that agreement.

unfettered discretion to accept or reject any transactions or opportunities brought to it by Vinewood." This instrument also provided that "any and all prior agreements, contracts and understandings between and among the parties to the Financing Agreement shall be fully and completely terminated and of no effect." The parties also executed a memorandum of understanding related to the settlement agreement between the parties (the Settlement MOU).

The final settlement agreement was executed on October 7, 2004 (the Settlement Agreement). This agreement, like the memoranda of understanding, was signed several months after the parties met in Geneva, where the oral commitment was allegedly made. The central purpose of the Settlement Agreement was to resolve the wrongful termination suit against Overland. Paragraph 4 of the instrument provides that plaintiffs (referring to Conrad, Pardue and Fairchild) fully release defendants (including Overland, Rawashdeh and a DMI affiliate) from all earlier contracts, agreements and promises. This express release for claims based on earlier promises undermines plaintiff's contention that defendants were committed to invest in specified amounts of real estate promoted by them.[3]

The final financing agreement was entered into on October 14, 2004, between Vinewood and August Investment Fund I Ltd (another DMI affiliate) in a document entitled Special Purpose Mudaraba Agreement.[4] The purpose of this agreement was to reduce to writing the defendants' agreement to provide $2.5 million in start up money for plaintiff's new business, Vinewood. No reference is made to any commitment by defendants to invest in properties brought to it by plaintiff. This agreement also contains a merger clause that

---

[3] This instrument also includes a merger clause which provides in Paragraph 6 that the Settlement Agreement "supercedes all previous oral and written negotiations, agreement, commitments, and writings in connection therewith."

[4] A Mudaraba Agreement is an Islamic financing transaction whereby one party entrusts funds to another party for use in business. It functions like a line of credit.

states that the written agreement contains the entire agreement between the parties and supercedes all prior agreements and understandings.

Vinewood argues that in reliance on promises from defendants, it established itself as a corporate entity, set up the business and began gathering information on projects for DMI. Defendants and Vinewood met again in London in December 2004. Representatives from Fairfield also attended the meeting. Vinewood states that at this meeting DMI looked at a list of projects they presented and agreed to finance them. Defendants state that the purpose of the meeting was to discuss Vinewood taking over management of already existing Overland projects that had been developed by Fairfield. Conrad wrote to Abdulla-Janahi after the London meeting and attached a list of projects Vinewood claimed defendants approved. However, Conrad states in the letter "If for some reason Shamil Bank/DMI does not want to provide all of the requested funding it will not be a problem. In fact, all Fairfield needs at this stage is just an indication of funding and not a commitment." Conrad requested from Shamil Bank/DMI its funding amounts for Fairfield's 2005 equity needs and again stated, "Each investment subject to being analyzed and approved on its own merits."

Vinewood alleges that after the December meeting DMI took their property proposals directly to Overland, cutting them out, while at the same time repeatedly assuring them that funding would be provided for the agreed upon projects. Plaintiff argues that when it discovered what was happening, it filed this suit claiming breach of contract, negligent misrepresentation, fraud and promissory estoppel. The defendants filed a motion for summary judgment on all claims, which the district court granted.

The district court concluded that Vinewood's sole source of proof of the alleged oral contract to fund $100 million in real estate projects was Conrad's testimony, by deposition and a declaration filed with Vinewood's opposition to

No. 12-11103

the motion for summary judgment. The court found that Conrad's declaration was inconsistent with his prior deposition testimony and therefore of questionable value.[5]   The district court also relied on the absence of contemporaneous documentary evidence of the $100 million commitment and the fact that the documentary evidence actually belied the existence of such an agreement.

Vinewood's other claims, which rest on the same allegations as the breach of contract claims, were similarly dismissed for lack of an issue of fact. This appeal followed.

## II.

This court reviews the grant of summary judgment de novo. *Threadgill v. Prudential Sec. Group, Inc.*, 145 F.3d 286, 292 (5th Cir. 1998). The motion should only be granted if there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). Evidence must be viewed in the light most favorable to the nonmoving party. *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008). However, conclusory allegations are insufficient to defeat a motion for summary judgment without probative evidence to support the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Similarly, a party's uncorroborated self-serving testimony cannot prevent summary judgment,

---

[5] Some of the inconsistencies involve whether Conrad knew the purpose of the Geneva meeting before he attended and whether settlement was discussed. Conrad's declaration also added information that was not disclosed in his deposition, i.e., that during the Geneva meeting Janahi and Rawashdeh apologized for previous events and asked if the parties could move beyond that incident and that a key issue for Vinewood at the London meeting was the need for the deals to be tax compliant. Regarding the oral contract, Conrad's declaration states that DMI agreed that it *would fund $100 million* into Fairfield residential investments. In his deposition, Conrad testified that DMI agreed that it would *fund no less than $100 million* of the Fairfield 2005 investments. Fairfield's declaration stated that DMI agreed to *fund up to $100 million* in business. The district court concluded that "While these discrepancies are subtle, when combined with the above-described contradictions in Conrad's testimony, they so convolute Vinewood's position that they preclude the creation of a dispute of fact concerning this essential term of the alleged oral contract."

particularly if the overwhelming documentary evidence supports the opposite scenario. *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 294 (5th Cir. 2004).

The district court properly applied these rules when assessing the summary judgment evidence in this case. The only evidence offered by Vinewood in support of the alleged oral contract between Vinewood and DMI for DMI to invest $100 million in real estate is Conrad's deposition testimony and affidavit. In contrast, as outlined above, the record is replete with documentary evidence, much of it produced by principals of Vinewood, that proposes a business relationship with defendants with no mention of the alleged oral agreement. In fact, correspondence sent by the plaintiff immediately after the Geneva meeting describes an agreement giving DMI full discretion to accept or reject any particular project generated by plaintiff. The Financing MOU echoes those terms describing DMI's right of first refusal on all real estate investments Vinewood presents, specifically stating that DMI would "have no obligation whatsoever to participate or become involved in such transactions." Neither the Settlement Agreement nor the Special Purpose Mudaraba Agreement contain any provision obligating DMI to participate in any real estate investments offered by Vinewood. In addition, even if we assume that an oral agreement was formed in Geneva, the release language in the Settlement Agreement and the merger clauses in the Settlement Agreement and the Mudaraba Agreement would negate that agreement. Months later, after the parties met in London in December 2004, Conrad continued to describe DMI's obligation to fund proposed projects as optional. In short, no document supports Conrad's testimony that DMI committed to fund $100 million in Vinewood-generated real estate investments.

As the district court concluded, Conrad's self-serving testimony is belied by the parties' contemporaneous written communications and written agreements and is therefore insufficient to create an issue of fact. *Id*.

No. 12-11103

Accordingly, we agree that plaintiff's summary judgment evidence failed to create a triable issue of fact tending to show that defendants committed to fund real estate projects generated by plaintiff.

III.

The district court also dismissed the Vinewood's claims of negligent misrepresentation, promissory estoppel, and fraud against the defendants. First, the district court found that Conrad's testimony concerning the representations made by Abdulla-Janahi and Rawashdeh was inconsistent with the weight of the documentary evidence and thus did not create an issue of fact. Based on the same analysis above in relation to the contract claim, we agree.

In addition, to the extent the negligent misrepresentation claim was based on assurances of the defendants' willingness to provide future funding, those representations are promises to perform future acts which are not actionable statements of existing fact. *Clardy Mfg. Co. v. Marine Midland Bus. Loans*, 88 F.3d 347, 357 (5th Cir. 1996) (The "false information" element contemplates a misstatement of an existing fact.)

IV.

Based on the foregoing analysis, we agree with the district court that Vinewood's claims fail as a matter of law and affirm the grant of summary judgment and dismissal of all claims. AFFIRMED.